COURT OF APPEALS OF VIRGINIA


Present:   Judges Frank, Clements and Senior Judge Willis
Argued at Alexandria, Virginia


CLARA JANE SCHWARTZ
                                                    OPINION BY
v.        Record No. 0577-03-4          JUDGE JEAN HARRISON CLEMENTS
                                                    APRIL 19, 2005
COMMONWEALTH OF VIRGINIA


FROM THE CIRCUIT COURT OF LOUDOUN COUNTY
Thomas D. Horne, Judge

James G. Connell, III (Corinne J. Magee; Devine & Connell, P.L.C.;
The Magee Law Firm, on briefs), for appellant.

Virginia B. Theisen, Assistant Attorney General (Jerry W. Kilgore,
Attorney General, on brief), for appellee.


Clara Jane Schwartz (appellant) was convicted in a jury trial of murder in violation of

Code § 18.2-32, conspiracy to commit murder in violation of Code § 18.2-22, and two counts of

solicitation to commit murder in violation of Code § 18.2-29.  On appeal, appellant contends the

trial court erred in (1) finding that her statutory right to a speedy trial was not violated,

(2) submitting the charges of murder and conspiracy to commit murder to the jury although

essential elements of those charges were not alleged with particularity in the indictment,

(3) concluding that the double jeopardy doctrine did not bar her conviction for both murder and

conspiracy to commit murder under the circumstances of this case, (4) determining that

Wharton's Rule did not bar her conviction for both murder and conspiracy to commit murder

under the circumstances of this case, and (5) excluding the testimony of Dr. Michael L. Deem

regarding the mental health of Kyle Hulbert, the principal in the first degree in the murder, and

quashing appellant's subpoena *duces tecum* seeking certain of Dr. Deem's interview notes and

Loudoun County Mental Health Center's treatment notes. Finding no error, we affirm the trial court's judgment and appellant's convictions.

## I. BACKGROUND

The facts pertinent to this appeal are not in dispute. In accordance with familiar principles of appellate review, "[w]e consider those facts in the light most favorable to the Commonwealth," the party that prevailed below. Rose v. Commonwealth, 265 Va. 430, 432, 578 S.E.2d 758, 759 (2003).

Appellant was the youngest child of the victim, Dr. Robert Schwartz. During her senior year in high school, appellant became friends with Katherine Inglis. Appellant told Inglis that her father was "continually doing stuff to her like try[ing] to poison her." During the summer and fall of 2001, appellant told Inglis that her father was "poisoning meat she would eat," "hitting her on occasion," and "pulling her under the water in their pool." She also told Inglis that "she wished he was dead" and that "she would inherit a third of a million dollars from her father" when he died. Inglis never saw any bruises or other evidence of physical abuse by appellant's father during the time she knew appellant.

In August 2001, appellant, who attended James Madison University (JMU), began dating Patrick House. Appellant complained to House that her father had attempted to molest and kill her. Appellant also made statements to House about her desire for her father's death and requested that he kill him. She gave House a book that contained information about poisoning and told him that she wanted her father's killing to "look natural" so it would "not be able to be traced back to her." She also told House that she would inherit money from her father when he died but "was concerned [he] was trying to cut her out of [his] will."

In September 2001, appellant went out to dinner with House and Inglis. During the meal, appellant said that her steak had been poisoned and speculated that her father had "gotten in

touch with the cook." Later, appellant asked House "when [he] planned on killing her father," to which House responded, "When the time was right, it would happen."

Later in September 2001, appellant met Kyle Hulbert at a Renaissance Fair in Maryland. Hulbert quickly became close friends with appellant, Inglis, and Inglis's boyfriend, Michael Pfohl. Appellant told Hulbert that "she had been suffering from mental and emotional abuse from her father," her father made "death threats" to her, and her father "had poisoned her [food] on several occasions." Appellant told Hulbert that appellant and her father "were going to the Virgin Islands for Christmas vacation" and that her father "was planning on making sure she did not come back."

In November 2001, Hulbert, Inglis, and Pfohl drove to James Madison University to spend the weekend with appellant. Appellant complained to Hulbert about "how her father had abused her and poisoned her" and showed him "some of her journals" in which she had documented those events. At the end of the weekend, appellant said to Inglis, "Maybe Kyle can help me with my father." She also told Inglis that she would be able to take a semester off "if her father died while she was in college."

After the weekend, appellant and Hulbert began to exchange instant messages and speak by telephone almost daily. During one instant message session, Hulbert responded to appellant's claim that her father had tried to kill her by saying appellant's father was lucky Hulbert did not know where he lived. Hulbert then asked appellant for permission to kill her father. Appellant told him to wait, saying they would talk more about it in person. Appellant further informed Hulbert that House also wanted to kill her father and that, if Hulbert did it, he should ensure it could not be traced back to her. Appellant then gave Hulbert general directions to her father's house, which was located in a rural area of Loudoun County.

On Thanksgiving weekend, appellant arranged for Hulbert to camp clandestinely in the woods near her father's house. Inglis and Pfohl dropped Hulbert off after dark. The next day, Hulbert went to the house to see appellant. During the brief visit, he met appellant's father and older sister and showed them a sword he had with him.

Soon thereafter, Hulbert asked appellant to send him money for gas so Pfohl could drive him and for gloves and a "do-rag" to "prevent him from leaving hairs at the scene" when he killed her father. On December 6, 2001, appellant wrote Hulbert a check for $60 and sent it to him via overnight mail.

On the evening of December 8, 2001, Inglis and Pfohl dropped Hulbert off near appellant's father's property. Hulbert, who had his sword strapped to his side, proceeded on foot to appellant's father's house. When appellant's father answered the door, Hulbert entered the house and killed him, stabbing him over thirty times with the sword. The next day, Hulbert told appellant on the telephone that he had killed her father.

A neighbor, learning appellant's father had not reported to work, discovered his body on December 10, 2001. Loudoun County Investigator Greg Locke traveled to James Madison University to inform appellant of her father's death. When asked about her friends, appellant provided information to the investigator about Hulbert, House, Pfohl, and Inglis, among others. Hulbert was arrested the following day.

After initially saying she thought Hulbert was only "venting" or "kidding" when he said he was going to kill her father, appellant told Investigator Locke, "I want to go straight. In my heart of hearts, I knew that [Hulbert] was going there to kill [my father]." Appellant was arrested on February 1, 2002, for the murder of her father and held continuously in custody thereafter. After being taken to jail, appellant told her cellmate that the plan was for Hulbert to

kill her father "because if anything came up he would take the blame because he had mental issues."

After a preliminary hearing on March 21, 2002, the juvenile and domestic relations district court found probable cause and certified appellant's murder charge to the circuit court for consideration by a grand jury. On March 29, 2002, the grand jury returned a four-count indictment charging appellant with murder, conspiracy to commit a felony, and two counts of solicitation to commit a felony. Specifically, count one of the indictment alleged that, "[o]n or about the 8th day of December, 2001, in the County of Loudoun [appellant] . . . did feloniously, willfully and deliberately, and with premeditation, kill and murder [her father] . . . in violation of [Code §] 18.2-32." Count two alleged that, "during the period from on or about November 2001 to on or about December 2001, [appellant] did feloniously and unlawfully conspire, confederate or combine with . . . Kyle Hulbert, et. al [sic] . . . to commit a felony within this Commonwealth, in violation of [Code §] 18.2-22." Count three alleged that, "during the period of November 2001 [appellant] did feloniously and unlawfully command, entreat, or otherwise attempt to persuade another person to commit a felony, in violation of [Code §] 18.2-29." Finally, the fourth count alleged that, "during the period from on or about June 2001 to on or about November 2001, [appellant] did feloniously and unlawfully command, entreat, or otherwise attempt to persuade another person to commit a felony, in violation of [Code §] 18.2-29."

By order entered April 5, 2002, the trial court set the case for trial by jury commencing August 5, 2002.

On June 14, 2002, appellant filed a motion seeking a bill of particulars as to counts two, three, and four of the indictment. With respect to count two, appellant sought to have the Commonwealth identify "the person(s), if any, referenced by the phrase 'et. al [sic]'" and "where and when the alleged agreement took place." With respect to counts three and four, appellant

- 5 -

sought to have the Commonwealth identify the date and location of the alleged solicitation, "the person who was the object of the alleged solicitation," and "the felony which was the subject of the alleged solicitation."

In response, the Commonwealth identified Hulbert and House as the recipients of the respective solicitations in counts three and four and identified murder and conspiracy to commit murder as the object felonies of both of those counts. The Commonwealth argued that further particularization of counts two, three, and four was unnecessary.

The trial court agreed that most of the other requested particularizations were not required, but directed the Commonwealth to particularize the persons identified in count two by the phrase "et. al [sic]." Count two was subsequently amended to reflect that the conspiracy was with Hulbert alone.

On July 3, 2002, Investigator Locke underwent medically necessary, major back surgery. On July 24, 2002, the Commonwealth moved for a continuance of the trial based on Locke's failure to recover from his surgery as quickly as expected. The parties stipulated that Locke was a material witness. The trial court initially denied the Commonwealth's motion for lack of evidence "from an expert" and continued the matter pending examination of Locke's medical records by a board-certified neurosurgeon to ascertain whether Locke would be "physically unable from a medical standpoint to testify" at the scheduled trial. The trial court required that the selected expert be made available to confer with counsel by telephone.

In an affidavit dated July 30, 2002, Dr. Michael G. Radley, a board-certified neurosurgeon and fellow of the American College of Surgeons, reported that, having reviewed the medical records relating to Locke's surgery and follow-up treatment, it was his opinion that Locke's condition did not allow him to sit in court longer than twenty to thirty minutes "without the potential for significant increasing back pain." Dr. Radley further opined that it was "highly

likely that if that time in court [was] greater than one day, [Locke's] increasing pain [would potentially] not allow him to continue through the entire proceedings." Dr. Radley advised that Locke not "be required to sit for prolonged periods of time" for another six to eight weeks. After submitting the affidavit, Dr. Radley was made available to counsel for both parties for telephonic consultation.

Based on Dr. Radley's affidavit, the trial court, over appellant's objection, granted the Commonwealth's motion for a continuance and set the trial for October 7, 2002. Appellant subsequently moved for dismissal of the charges against her on speedy trial grounds, noting that the rescheduled trial exceeded the five-month limitation set forth in Code § 19.2-243 by more than six weeks. In denying appellant's motion to dismiss, the trial court recited Dr. Radley's opinions and explained that the court, "respecting the rights of the parties in this case, set [the trial date] at the minimum that it could [be] set within what the doctor had testified to [as] the [time] frame . . . within which [Locke] would be able to testify."

Following his arrest, Hulbert was charged in the circuit court with the first-degree murder of appellant's father. The court directed Loudoun County Mental Health Center to perform a mental evaluation to determine Hulbert's sanity at the time of the offense, pursuant to Code § 19.2-169.5, and to assist Hulbert's counsel in his criminal defense, including providing treatment to Hulbert if necessary. Dr. Deem, a clinical psychologist with Loudoun County Mental Health Center, performed the ordered mental evaluation, and other personnel at Loudoun County Mental Health Center provided treatment to Hulbert.

On September 17, 2002, appellant requested the issuance of a subpoena *duces tecum* to Dr. Deem for production of certain "documents relied upon by Loudoun County Mental Health Center in the formation of opinions or reports regarding the mental health of Kyle Hulbert." Specifically, appellant sought the notes prepared by Dr. Deem of his interviews with third parties

- 7 -

regarding Hulbert's mental health, "[d]ocuments prepared by third parties subsequent to December 8, 2001, and forwarded to Dr. Deem to assist in his evaluation," and Loudoun County Mental Health Center's treatment notes concerning Hulbert.

Hulbert's and Loudoun County Mental Health Center's respective attorneys filed motions to quash the requested subpoena. Hulbert's counsel acknowledged, at the October 3, 2002 hearing on the motions to quash, that the "[d]ocuments prepared by third parties subsequent to December 8, 2001, and forwarded to Dr. Deem to assist in his evaluation" were not privileged or otherwise protected. He argued, however, that Dr. Deem's third-party-interview notes in preparation of the Code § 19.2-169.5 report and Loudoun County Mental Health Center's treatment notes were protected by the attorney-client privilege set forth in Code § 19.2-169.5(E), which Hulbert had not waived, and the work product doctrine. Hulbert's counsel, whom the court had directed to review the relevant documents in order to particularize his objections, further argued that the treatment notes were "indispensable to his defense" of Hulbert because "90 percent of the content [of] those . . . notes [were] statements of the facts from Kyle Hulbert."

Finding that Dr. Deem's notes of his interviews with third parties and the Loudoun County Mental Health Center's treatment notes were protected under the attorney-client privilege because "Dr. Deem was an indispensable agent of [Hulbert's] attorney," the trial court granted the motions to quash with respect to those documents.

Appellant's trial commenced on October 7, 2002. During the trial, appellant adduced evidence that Hulbert had demonstrated antisocial and unstable behaviors in the past and had a history of mental problems. When appellant called Dr. Deem to testify regarding Hulbert's mental state, Hulbert's attorney objected to the admission of such testimony on the ground that Dr. Deem was his agent and Dr. Deem's testimony regarding Hulbert's mental state was

- 8 -

protected by the attorney-client privilege. The trial court sustained the objection, noting that

Dr. Deem had prepared the court-ordered Code § 19.2-169.5 report.

Following the presentation of evidence, the trial court refused appellant's instruction on

manslaughter and instructed the jury, over the appellant's objection, as follows:

> The defendant is charged with the crime of first degree
> murder. The Commonwealth must prove beyond a reasonable
> doubt each of the following elements of that crime:
>
> 1. That Kyle Hulbert killed Dr. Robert Schwartz; and
>
> 2. That the killing was malicious; and
>
> 3. That the killing was willful, deliberate and premeditated; and
>
> 4. That the defendant acted as an accessory before the fact or
> conspired with Kyle Hulbert in the commission of the killing of
> Dr. Robert Schwartz as those terms are defined in other
> instructions by the Court.

Appellant contended the homicide charge submitted to the jury could "be no more than a

voluntary manslaughter" because count one of the indictment did not allege the element of

malice.

The trial court also instructed the jury (1) that, on the murder charge, the Commonwealth

had to prove appellant, "as an accessory before the fact, shared the criminal intent of . . .

Hulbert," (2) that "[a]n accessory before the fact is liable for the same punishment as the person

who actually committed the crime," and (3) that

> [a]n accessory before the fact is one who is not present at the time
> of the commission of the crime, but who, before the commission of
> the crime, in some way planned, advised or assisted in the
> commission of the crime, knowing or having reason to know of the
> intent of the principal to commit the crime.

The trial court further instructed the jury, over the appellant's objection, as follows:

> The defendant is charged with the crime of conspiracy.
> The Commonwealth must prove beyond a reasonable doubt each
> of the following elements of that crime:

　　　　1.  That the defendant entered into an agreement with Kyle
　　　　Hulbert; and

　　　　2.  That the agreement was to commit murder; and

　　　　3.  That both the defendant and Kyle Hulbert intended to commit
　　　　murder.

Appellant contended the Commonwealth was "not entitled to the word 'murder' in [the]

instruction" because count two of the indictment charged her only with conspiracy to "commit a

felony" without specifying the object felony.  In rejecting appellant's argument, the trial court

reasoned that no "other felony [was] suggested."

　　　　The jury found appellant guilty of first-degree murder, conspiracy to commit murder, and

two counts of solicitation to commit murder.  The jury recommended a sentence of thirty years

for the murder, eight years for the conspiracy, and five years for each of the solicitations, for a

total sentence of forty-eight years.

　　　　Following trial, appellant filed a motion to set aside the murder and conspiracy

convictions on the ground that the jury should not have been instructed she was charged with

first-degree murder and conspiracy to commit murder because count one of the indictment did

not allege malice and accomplice liability and count two did not allege the object felony.

Appellant also moved to have the conspiracy conviction set aside and the charge dismissed

(1) on double jeopardy grounds because, as submitted to the jury, count two was a

lesser-included offense of count one and (2) for violation of Wharton's Rule.  After denying

appellant's post-trial motions, the trial court imposed the recommended forty-eight-year sentence

in a final order entered February 19, 2003.

　　　　This appeal followed.

## II.  RIGHT TO A SPEEDY TRIAL

On appeal, appellant contends the trial court erred in refusing to grant her motion to dismiss the charges against her on the ground that she was denied her right to a speedy trial because the trial court improperly continued the commencement of her trial beyond the deadline established by Code § 19.2-243.  We disagree.

Code § 19.2-243 constitutes Virginia's "statutory embodiment of the constitutional right to a speedy trial."  Clark v. Commonwealth, 4 Va. App. 3, 5, 353 S.E.2d 790, 791 (1987).  The statute protects the accused from lengthy incarceration prior to trial by mandating the dismissal of charges where more than five months elapse from the indictment or finding of probable cause by the district court to the commencement of trial.  Code § 19.2-243.  The application of the statute may be tolled, however, for any of several enumerated conditions, including when a prosecution witness is "prevented from attending [the trial] by sickness or accident."  Code § 19.2-243(2); see Robinson v. Commonwealth, 28 Va. App. 148, 152-53, 502 S.E.2d 704, 706 (1998) ("Strict adherence to the statutory time requirement is tempered by the provisions setting forth specific circumstances excusing the Commonwealth's failure to bring an accused to trial within the prescribed time.").

In this case, the juvenile and domestic relations district court found probable cause and certified the murder charge on March 21, 2002, and the grand jury indicted appellant on the three other related charges on March 29, 2002.  The trial court originally set the trial to commence within the five-month limitation period prescribed by Code § 19.2-243, on August 5, 2002.  Subsequently, however, applying the "sickness" exception of Code § 19.2-243(2), the trial court granted the Commonwealth's motion for a continuance to allow for Investigator Locke's recovery from his medically necessary back surgery and set the trial for October 7, 2002, which, as appellant points out, was beyond the statutory limitation period.

- 11 -

At issue, therefore, is whether Locke's medically necessary back surgery properly implicated the "sickness" exception set forth in Code § 19.2-243(2). Because this is a question of law involving statutory interpretation, we review the trial court's judgment *de novo*. See Sink v. Commonwealth, 28 Va. App. 655, 658, 507 S.E.2d 670, 671 (1998) ("Although the trial court's findings of historical fact are binding on appeal unless plainly wrong, we review the trial court's statutory interpretations and legal conclusions *de novo*.").

Appellant argues that the word "sickness" has a plain and unambiguous meaning that places Locke's surgery and his recovery from that surgery outside the scope of the exception. In support of her position, appellant points to the definition of "sickness" propounded in Black's Law Dictionary: "Illness; disease. An ailment of such a character as to affect the general soundness and health; not a mere temporary indisposition, which does not tend to undermine and weaken the constitution." Black's Law Dictionary 1380 (6th ed. 1990).[1] Locke's surgery, appellant argues, "was not an illness or a disease" and, thus, "was not 'sickness' within the meaning of Code § 19.2-243(2)."

We find no merit in appellant's argument. It is well established that, "[w]hen, as here, a statute contains no express definition of a term, the general rule of statutory construction is to infer the legislature's intent from the plain meaning of the language used," in light of the context in which the term at issue is used. Hubbard v. Henrico Ltd. Partnership, 255 Va. 335, 340, 497 S.E.2d 335, 338 (1998). We will not "apply 'an unreasonably restrictive interpretation of the statute' that would subvert the legislative intent expressed therein." Armstrong v. Commonwealth, 263 Va. 573, 581, 562 S.E.2d 139, 144 (2002) (quoting Ansell v. Commonwealth, 219 Va. 759, 761, 250 S.E.2d 760, 761 (1979)); see also Commonwealth v. Zamani, 256 Va. 391, 395, 507

---

[1] Subsequent editions of Black's Law Dictionary do not include the word "sickness" as a discrete entry.

- 12 -

S.E.2d 608, 609 (1998) (noting that the "plain, obvious, and rational meaning" of the statute should prevail "over any curious, narrow, or strained construction"). In the present context, the plain meaning of the term "sickness" includes "the condition of being ill," "a disordered, weakened or unsound condition," and "a form of disease." Webster's Third New International Dictionary 2111 (1993). Here, it is clear from the record that, as a result of major back surgery, Investigator Locke was in "a disordered, weakened or unsound condition" that, as the trial court implicitly found, made him "physically unable from a medical standpoint to testify" at trial within the time limit prescribed by Code § 19.2-243. We cannot say, therefore, that Locke's condition during his recuperation from surgery was not "sickness" within the meaning of Code § 19.2-243(2).

Indeed, this interpretation is also compelled by the definition of "sickness" espoused by appellant. Although arguably not an "illness" or "disease," the debilitative effect of Locke's surgery plainly constituted "[a]n ailment of such a character as to affect [his] general soundness and health . . . [and] undermine and weaken [his] constitution." Black's Law Dictionary, supra, at 1380.

Moreover, the interpretation urged by appellant would lead to an absurdity, since it would permit the tolling of Code § 19.2-243's strictures as long as a witness suffered from an illness or disease that prevented him or her from appearing at trial but require resumption of the running of the limitation period if the witness has surgery to treat the illness or disease, no matter how debilitating the surgery's effect. This result would eviscerate the statute of its purpose, which is to provide for speedy trial exceptions in circumstances "beyond the control of the trial judge and the parties," when delays are warranted to "ensure a fair trial to both the accused and the Commonwealth." Baity v. Commonwealth, 16 Va. App. 497, 502, 431 S.E.2d 891, 894 (1993).

We will not interpret a statute "so that it leads to absurd results." Branch v. Commonwealth, 14 Va. App. 836, 839, 419 S.E.2d 422, 424 (1992).

We hold, therefore, that the trial court properly continued the commencement of appellant's trial beyond the five-month deadline set forth in Code § 19.2-243 due to Investigator Locke's inability to attend trial because of "sickness." Accordingly, the trial court did not err in denying appellant's motion to dismiss.

### III. PARTICULARITY OF THE INDICTMENT

Appellant further contends the trial court erred in instructing the jury that she was charged with first-degree murder as an "accessory before the fact or co-conspirator" and conspiracy to commit murder because the Commonwealth did not allege essential elements of those offenses. In light of such omissions, she argues, the submission of the murder and conspiracy charges to the jury violated her due process and notice rights under the United States and Virginia Constitutions and Code § 19.2-220. We disagree.

"Both the United States and Virginia Constitutions recognize that a criminal defendant enjoys the right to be advised of the cause and nature of the accusation lodged against [her]."[2] Simpson v. Commonwealth, 221 Va. 109, 114, 267 S.E.2d 134, 138 (1980). "The important concerns evident in these provisions are fully honored by Virginia Code §[] 19.2-220, [which] . . . requires that an indictment name the accused, describe the offense charged, identify the location of the alleged commission, and designate a date for the offense." Id. "An indictment, to be sufficient, must give an accused notice of the nature and character of the charged offense so

---

[2] The Sixth Amendment of the United States Constitution provides, in relevant part, that "[i]n all criminal prosecutions the accused shall enjoy the right to . . . be informed of the nature and cause of the accusation." Article I, Section 8 of the Virginia Constitution provides that "in all criminal prosecutions a man hath the right to demand the cause and nature of his accusation."

the accused can make his defense." Commonwealth v. Dalton, 259 Va. 249, 253, 524 S.E.2d 860, 862 (2000).

"When considering on appeal whether an indictment charged a particular offense, we limit our scrutiny to the face of the document." Moore v. Commonwealth, 27 Va. App. 192, 198, 497 S.E.2d 908, 910 (1998). However, since it is the function of the bill of particulars to supply additional information to the defendant concerning an accusation, "the bill of particulars and the indictment must be read together." Livingston v. Commonwealth, 184 Va. 830, 837, 36 S.E.2d 561, 565 (1946). We also consider as "incorporated by reference" the statutes cited in the indictment. Reed v. Commonwealth, 3 Va. App. 665, 667, 353 S.E.2d 166, 167-68 (1987).

### A. Murder Charge

Count one of the indictment, on which appellant was prosecuted for murder, alleged, in pertinent part, that appellant "did feloniously, willfully and deliberately, and with premeditation, kill and murder [her father] . . . in violation of [Code §] 18.2-32." At trial, the court refused appellant's manslaughter instruction and instructed the jury that appellant was charged with first-degree murder. The court further instructed the jury that, to sustain the murder conviction, the Commonwealth had to prove beyond a reasonable doubt that Hulbert killed appellant's father, "the killing was malicious . . . willful, deliberate and premeditated," and appellant "acted as an accessory before the fact or conspired with . . . Hulbert in the commission of the killing."

Appellant first submits that she could not properly be convicted of or punished for a homicide offense greater than voluntary manslaughter because count one of the indictment failed to allege malice, a necessary element of the crime of murder. See Rhodes v. Commonwealth, 238 Va. 480, 485, 384 S.E.2d 95, 98 (1989) ("Malice, an essential element of all grades of murder, distinguishes murder from manslaughter."). That defect, she argues, unlawfully denied her notice of the nature and character of the first-degree-murder charge submitted to the jury.

- 15 -

Appellant acknowledges that count one of the indictment complied with the provisions of Code § 19.2-221[3] and that "the Supreme Court of Virginia has repeatedly upheld Code § 19.2-221 against constitutional challenges" in the past. See, e.g., Simpson v. Commonwealth, 221 Va. 109, 115, 267 S.E.2d 134, 139 (1980); Barber v. Commonwealth, 206 Va. 241, 246-47, 142 S.E.2d 484, 489 (1965). She asserts, however, that the United States Supreme Court decision in Apprendi v. New Jersey, 530 U.S. 466 (2000), rendered those Virginia Supreme Court cases "obsolete" and Code § 19.2-221's provisions permitting the use of a short-form indictment for murder unconstitutional. Thus, she concludes, the submission of the charge of first-degree murder to the jury violated her constitutional and statutory rights to due process and notice.

This Court recently addressed the same issue in Walshaw v. Commonwealth, 44 Va. App. 103, 603 S.E.2d 633 (2004), appeal filed, No. 042542 (November 12, 2004). Thus, our decision in that case, which was issued during the pendency of this appeal, controls the disposition of the present issue.

As in this case, the appellant in Walshaw challenged the indictment as not setting forth with sufficient particularity the elements necessary to convict and punish him on the charge of first-degree murder. Id. at 107, 603 S.E.2d at 634. There, as here, the short-form indictment

---

[3] Code § 19.2-221 provides, in pertinent part, as follows:

> While any form of . . . indictment . . . which informs the accused of the nature and cause of the accusation against him shall be good the following shall be deemed sufficient for murder and manslaughter:

> Commonwealth of Virginia .................... county (or city) to-wit: The grand jurors of the Commonwealth of Virginia, in and for the body of the county (or city) of .........., upon their oaths present that A .......... B .........., on the .......... day of .........., 20 .........., in the county (or city) of .................... feloniously did kill and murder one C .......... D .......... against the peace and dignity of the Commonwealth.

complied with Code § 19.2-221, referenced Code § 18.2-32, and did not allege malice, and the appellant argued that the jury should only have been instructed on voluntary manslaughter. Id. at 107-08, 110, 603 S.E.2d at 635-36. The defective indictment, he contended, "denied him adequate notice of the charge against him as required by the United States Constitution and . . . Apprendi." Id. at 108-09, 603 S.E.2d at 635. After concluding that the issue before the United States Supreme Court in Apprendi—"whether the sentencing judge could impose a sentence in excess of the maximum for the offense of which the defendant had been indicted and convicted under New Jersey law"—was wholly inapposite to the resolution of the issue before this Court, we held

> that the short form statutory indictment on which appellant was convicted fully informed him of the nature and cause of the accusation against him as required by the United States and Virginia Constitutions. The absence of the word[] "malice" . . . in the indictment did not render it defective to charge first-degree murder. It was sufficient that it alleged that appellant "murdered" [the victim] and that it referred to Code § 18.2-32. Finding no constitutional defect in appellant's indictment, we affirm the judgment of the trial court.

Id. at 112-15, 603 S.E.2d at 637-39 (footnote omitted).

Accordingly, we hold that Apprendi is inapposite to the instant issue, since, as in Walshaw, "appellant did not face an enhanced punishment imposed by a judge beyond the statutory maximum for the crime of which [she] was convicted." Id. at 114, 603 S.E.2d at 638. We further hold that, even though it did not allege malice, count one of the indictment informed appellant of the nature and character of the murder charge on which she was convicted and gave her adequate notice of the offense to make her defense. Thus, the submission of the charge of first-degree murder to the jury did not violate her constitutional and statutory rights to due process and notice.

Appellant also maintains that she could not lawfully be convicted of or punished for murder as "an accessory before the fact or co-conspirator," the theory on which her conviction for murder rested, because count one of the indictment failed to allege any fact supporting a theory of accomplice liability. As a result, she asserts, she had no notice that she would need to defend herself from prosecution by the Commonwealth under such a theory. Thus, she argues, the

> situation here is analogous to that in Commonwealth v. Dalton, 259 Va. 249, 524 S.E.2d 860 (2000). In Dalton, the Supreme Court of Virginia held that the United States and Virginia Constitutions, as well as Code § 19.2-220, bar a defendant's conviction for accessory after the fact on an indictment as a principal. . . . Likewise, the same constitutional authorities bar the Commonwealth from convicting appellant on an accessory [before the fact] or co-conspirator theory on an indictment as a principal.

Accordingly, appellant concludes, the trial court erred in submitting the murder charge to the jury based on the theory of accomplice liability.

Appellant's reliance on Dalton is misplaced. Indeed, Dalton supports the trial court's action here.

In Dalton, our Supreme Court addressed the issue whether a defendant who was tried on an indictment charging murder was entitled to an accessory-after-the-fact jury instruction. In analyzing that issue, the Supreme Court first noted that, pursuant to Code § 19.2-220 and the Due Process Clauses of the United States and Virginia Constitutions, the indictment must give the accused "notice of the nature and character of the charged offense so the accused can make his defense." Dalton, 259 Va. at 253, 524 S.E.2d at 862. Citing the common-law principle that "an accused cannot be convicted of a crime that has not been charged, unless the crime is a lesser-included offense of the crime charged," the Supreme Court then articulated the rule that "neither the Commonwealth nor an accused is entitled to a jury instruction on an offense not charged, unless the offense is a lesser-included offense of the charged offense." Id. The Court

- 18 -

then proceeded to determine that "the crime of being an accessory after the fact is not a lesser-included offense of the crime of murder."  Id. at 253-54, 524 S.E.2d at 862-63.  The Court's analysis did not conclude at that point, however.

Instead, the Supreme Court went on to consider whether Code § 19.2-286—which provides, in pertinent part, that "[o]n an indictment for felony the jury may find the accused not guilty of the felony but guilty of . . . being an accessory thereto"—creates a statutory exception permitting the giving of an accessory-after-the fact instruction on a felony indictment against the defendant as a principal.  Examining the legislative history of the statute, the Court noted as follows:

> Code § 19.2-286 was formerly Code § 19.1-254.  Former Code § 19.1-254, as it existed prior to its repeal in 1975, provided that "on an indictment for felony the jury may find the accused not guilty of the felony but guilty of an attempt to commit such felony, *or of being an accessory after the fact*."  (Emphasis added.)  In 1975, when Title 19.2 of the Code replaced Title 19.1, the statute was changed by substituting the term "accessory thereto" for the term "accessory after the fact."
>
> In deleting the modifier, "after the fact," the General Assembly indicated its intention to eliminate accessories after the fact from the application of Code § 19.2-286. *By limiting the statute's application to accessories before the fact, any conflict between the statute and the notification requirements of due process was avoided.*

Id. at 254, 524 S.E.2d at 863 (second emphasis added).  Having thus found that the exception established in Code § 19.2-286 was intended to apply only to accessories before the fact, the Court held that, "before a defendant can be tried and convicted of being an accessory after the fact, he must be charged with that offense" and that, "[u]nless such a charge is specifically made, neither the Commonwealth nor an accused is entitled to an accessory-after-the-fact instruction."  Id. at 255, 524 S.E.2d at 863.

- 19 -

Notwithstanding appellant's claim that the ambit of the Supreme Court's ultimate holding in Dalton extends analogically to the circumstances of the present case, it is clear from the above-quoted portion of the Supreme Court's analysis in Dalton and the plain language of Code § 19.2-286 that a defendant may be convicted of being an accessory before the fact on a felony indictment charging the defendant as a principal and that such a conviction does not violate "the notification requirements of due process."[4]  It follows, therefore, that the Commonwealth is entitled, under Code § 19.2-286, to an accessory-before-the-fact instruction on a felony indictment even when the defendant is not charged in the indictment with being an accessory before the fact to the felony.  This conclusion is also compelled by the plain language of Code § 18.2-18, which provides, in pertinent part, that "every accessory before the fact may be indicted, tried, convicted and punished *in all respects* as if a principal in the first degree."[5]

_____

[4] It is worth noting, given appellant's claim that she was unaware she would be prosecuted on count one of the indictment under an accessory-before-the-fact theory, that, throughout the entire trial, appellant defended the murder charge by claiming she did not intend for Hulbert to kill her father or know that he would actually do so.  "An accessory before the fact is an individual who must 'know or have reason to know of the principal's criminal intention and must intend to encourage, incite, or aid the principal's commission of the crime.'"  Smith v. Commonwealth, 33 Va. App. 65, 70, 531 S.E.2d 608, 610 (2000) (quoting McGhee v. Commonwealth, 221 Va. 422, 427, 270 S.E.2d 729, 732 (1980)).

[5] Code § 18.2-18 provides in its entirety as follows:

> In the case of every felony, every principal in the second degree and every accessory before the fact may be indicted, tried, convicted and punished in all respects as if a principal in the first degree; provided, however, that except in the case of a killing for hire under the provisions of subdivision 2 of § 18.2-31 or a killing pursuant to the direction or order of one who is engaged in a continuing criminal enterprise under the provisions of subdivision 10 of § 18.2-31 or a killing pursuant to the direction or order of one who is engaged in the commission of or attempted commission of an act of terrorism under the provisions of subdivision 13 of § 18.2-31, an accessory before the fact or principal in the second degree to a capital murder shall be indicted, tried, convicted and punished as though the offense were murder in the first degree.

(Emphasis added.) See Hyman v. Commonwealth, 206 Va. 891, 892-93, 147 S.E.2d 156, 157 (1966) (holding that, pursuant to the same, "perfectly plain" language of the statutory predecessor of Code § 18.2-18, the defendant could properly be convicted as an accessory before the fact on an indictment charging statutory burglary); Sutton v. Commonwealth, 228 Va. 654, 668-69, 324 S.E.2d 665, 673 (1985) (Poff, J., concurring) (noting that, "[a]t common law, an accessory before the fact to a felony could not be convicted under an indictment charging him as a principal" and that Code § 18.2-18 "abolish[es] the common law distinction" between an accessory before the fact and a principal); id. at 670 n.*, 324 S.E.2d at 674 n.* (Stephenson, J., dissenting) (noting that, "[h]ad [the defendant] been indicted as a principal in the first degree, she could have been convicted as an accessory before the fact" under Code § 18.2-18).

Here, appellant was charged in the indictment with first-degree murder. Consequently, the Commonwealth was entitled to an accessory-before-the-fact jury instruction on that offense. Accordingly, we hold that the trial court did not err in submitting the murder charge to the jury based on the theory that appellant was "an accessory before the fact or co-conspirator" in the commission of the charged murder.

## B. Conspiracy Charge

As amended, count two of the indictment alleged, in pertinent part, that appellant "did feloniously and unlawfully conspire, confederate or combine with . . . Kyle Hulbert, . . . to commit a felony . . . , in violation of [Code §] 18.2-22."[6] At trial, the court instructed the jury

---

[6] Code § 18.2-22, entitled "Conspiracy to commit felony," provides, in pertinent part, as follows:

> (a) If any person shall conspire, confederate or combine with another, either within or without this Commonwealth, to commit a felony within this Commonwealth, or if he shall so conspire, confederate or combine with another within this Commonwealth to commit a felony either within or without this

- 21 -

that appellant was charged with conspiracy and that the Commonwealth had to prove beyond a reasonable doubt that appellant "entered into an agreement with Kyle Hulbert," that "the agreement was to commit murder," and that appellant and Hulbert both "intended to commit murder."  After the jury found appellant guilty of conspiracy, the trial court gave the jury an instruction setting out the range of punishment that could be imposed for a Class 5 felony.  The jury recommended a term of imprisonment of eight years for the conspiracy, which the court subsequently imposed.

Appellant contends on appeal, as she did below, that the Commonwealth was not entitled to have the object felony of the charged conspiracy identified in the instruction as murder because count two of the indictment did not identify the object felony as murder.  She claims that, if the Commonwealth intended to seek her conviction of and punishment for a Class 5 felony offense of conspiracy under Code § 18.2-22(a)(2), as opposed to the less severe offense of conspiracy set forth in Code § 18.2-22(a)(3), count two should have specifically identified the object felony of the conspiracy as murder or, at least, identified it as an offense that was punishable by five or more years' incarceration.  Since count two failed to identify the object

Commonwealth, he shall be guilty of a felony which shall be punishable as follows:

(1) Every person who so conspires to commit an offense which is punishable by death shall be guilty of a Class 3 felony;

(2) Every person who so conspires to commit an offense which is a noncapital felony shall be guilty of a Class 5 felony; and

(3) Every person who so conspires to commit an offense the maximum punishment for which is confinement in a state correctional facility for a period of less than five years shall be confined in a state correctional facility for a period of one year, or, in the discretion of the jury or the court trying the case without a jury, may be confined in jail not exceeding twelve months and fined not exceeding $500, either or both.

- 22 -

felony, she was not, she argues, properly notified of the conspiracy-to-commit-murder charge. Relying on the rule stated by this Court in Hall v Commonwealth, 8 Va. App. 350, 381 S.E.2d 512 (1989), that, in order to convict a defendant under a statute that contains multiple offenses carrying different punishments, "the indictment must contain an assertion of the facts essential to the punishment sought to be imposed," appellant further argues that, because count two identified no specific felony as the object of the charged conspiracy and alleged no fact authorizing any but the minimum punishment set forth in the Code § 18.2-22(a), the indictment could only support conviction for the least serious offense contemplated by the statute, since she "cannot be expected to have assumed that [she] was charged with [a greater offense] unless it was expressly charged in the indictment." Hall, 8 Va. App. at 352, 381 S.E.2d at 513. Thus, she concludes, the trial court violated her rights to due process and notice by submitting the charge of conspiracy to commit murder to the jury.

Appellant's reliance on Hall in this case is misplaced. Code § 18.2-300, the statute under which the appellant in Hall was convicted, "defines two separate crimes," one each in its two subsections, A and B.[7] Id. at 351, 381 S.E.2d at 512. In Hall, the appellant was specifically "indicted for the use of a 'sawed-off shotgun' in the commission of a 'crime,'" a Class 4 felony in violation of Code § 18.2-300(B). Id. However, the trial court instructed the jury that the appellant was charged with the more serious crime of "using a 'sawed-off' shotgun in the

---

[7] Code § 18.2-300 provides as follows:

> A. Possession or use of a "sawed-off" shotgun or "sawed-off" rifle in the perpetration or attempted perpetration of a crime of violence is a Class 2 felony.

> B. Possession or use of a "sawed-off" shotgun or "sawed-off" rifle for any other purpose, except as permitted by this article and official use by those persons permitted possession by § 18.2-303, is a Class 4 felony.

commission of a crime 'of violence,'" a Class 2 felony in violation of Code § 18.2-300(A). Id. at 351, 381 S.E.2d at 512-13. "The jury was also instructed that the range of punishment was that of a Class 2, not a Class 4, felony." Id. at 351-52, 381 S.E.2d at 513. Since the indictment failed to give the appellant notice of the crime of which he was convicted and, in fact, advised him that he was charged with the other, less serious crime set forth in Code § 18.2-300, we reversed his conviction. Id. at 352, 381 S.E.2d at 513.

Here, however, appellant was correctly informed in count two of the indictment that she was charged with conspiracy to commit a felony in violation of Code § 18.2-22. Appellant nevertheless argues that she could not be convicted of and punished for a Class 5 felony offense of conspiracy because the indictment failed to allege an object felony. At the heart of appellant's argument is the implicit assertion that subsections 1, 2, and 3 of Code § 18.2-22(a) each contain a distinct conspiracy offense carrying its own punishment range based on the gravity of the object felony. Appellant, however, is mistaken about the nature of the statute under which she was convicted. Rather than setting out three distinct offenses, Code § 18.2-22(a) defines only a single offense—conspiracy to commit a felony. That offense, consisting of the "proscribed conduct [and] the attendant elements, is clearly defined in the initial sentence of the statute." Thomas v. Commonwealth, 37 Va. App. 748, 754, 561 S.E.2d 56, 59 (2002) (examining, in consideration of a similar issue, Code § 18.2-308.2); see Code § 18.2-22. The punishment for the offense is then set out in subsequent subsections based on the gravity of the object felony, ranging from a fine "not exceeding $500" up to a prison term of twenty years and a fine of $100,000. Code § 18.2-22(a); Code § 18.2-10. It is clear, therefore, from the statutory scheme set forth in Code § 18.2-22(a), that, contrary to appellant's assertion, the subsections of Code § 18.2-22(a) contain gradations of punishment, not separate and distinct offenses comprised of their own discrete elements. Indeed, as we observed relative to the statute at issue in Thomas,

- 24 -

"such disparate penalties do not spawn gradations of the offense. The crime is not defined by the penalty." 37 Va. App. at 754, 561 S.E.2d at 59. Accordingly, this is not a case like Hall, in which the trial court allowed "the Commonwealth [to] . . . effectively ambush the accused with an instruction that would effectively permit the jury to convict an accused for a separate crime not charged in the indictment." Dalton, 259 Va. at 256, 524 S.E.2d at 864 (Koontz, J., dissenting). Hence, Hall is inapposite, and appellant's argument fails.

Because count two fully informed appellant that she was charged with conspiring to commit a felony, in violation of Code § 18.2-22, and because conspiracy to commit a felony is the only crime set forth in Code § 18.2-22, we hold that count two was sufficient to advise appellant "of the cause and nature of the accusation lodged against [her]," as required by the United States and Virginia Constitutions. Simpson, 221 Va. at 114, 267 S.E.2d at 138. "To the extent appellant required additional particulars of the charge to [more ably] defend [herself, she] could have requested [such particulars in her motion for] a bill of particulars." Walshaw, 44 Va. App. at 115 n.6, 603 S.E.2d at 639 n.6. Although appellant requested particulars regarding the object felonies of the solicitation charges in counts three and four of the indictment and particulars regarding the phrase "et. al [sic]" in count two, she did not seek particulars regarding the object felony of the conspiracy alleged in count two. Likewise, appellant does not assert, and the record does not show, that she suffered any prejudice because count two of the indictment did not identify the object felony as murder. As the trial court effectively found, no "other [object] felony [was] suggested" by the evidence presented at trial.

We hold, therefore, that, in the context of this case, the trial court did not err in submitting the charge of conspiracy to commit murder to the jury.

IV. DOUBLE JEOPARDY

As previously noted, the Commonwealth's prosecution of appellant for first-degree murder was based on the theory that appellant participated in the commission of the charged murder as an accessory before the fact and was, therefore, subject, under Code § 18.2-18, to conviction and punishment for the murder as if she were the principal in the first degree. At the conclusion of the evidence, the trial court gave, without objection by the Commonwealth, a finding instruction that informed the jury that, to prove the murder charge lodged against appellant in count one of the indictment, the Commonwealth had to prove, *inter alia*, that appellant "acted as an accessory before the fact or conspired with . . . Hulbert in the commission of the killing."[8] The same instruction effectively incorporated by reference the definition of "an accessory before the fact" set forth in another instruction and the elements of conspiracy-to-commit-murder contained in the finding instruction subsequently given by the court for the conspiracy charge lodged against appellant in count two of the indictment.

On appeal, appellant acknowledges the general principle that a conspiracy to commit a crime and the substantive crime that is the object of the conspiracy are separate and distinct offenses and conviction and punishment may be had for each offense. See Wayne R. LaFave, Criminal Law § 6.5(h), at 612 (3d ed. 2000) (stating that, at common law, "it is now possible for a defendant to be convicted and punished for both the conspiracy and the substantive offense"); Pereira v. United States, 347 U.S. 1, 11 (1954) ("It is settled law in this country that the commission of a substantive offense and a conspiracy to commit it are separate and distinct crimes, and a plea of double jeopardy is no defense to a conviction for both."); Boyd v. Commonwealth, 236 Va. 346, 351, 374 S.E.2d 301, 303 (1988) (holding that, notwithstanding

---

[8] Although immaterial to the issue before us, it should be noted that, as the Commonwealth points out in its appellate brief, there is, in Virginia, no such crime as murder in the course of a conspiracy.

Code § 18.2-23.1's application to successive trials, "conviction of both the completed substantive offense and the underlying conspiracy" are permitted in Virginia "provided the convictions occurred, as here, in a single trial"). Appellant contends, nonetheless, that, because the trial court instructed the jury that the charged conspiracy was an element of the charged murder, the prohibition against double jeopardy protects her from being sentenced to consecutive terms for those crimes. Specifically, appellant claims that, because the Commonwealth did not object to the finding instruction for murder given to the jury in this case, the elements set forth therein constitute the law of the case. Hence, appellant reasons, the inclusion in that instruction of conspiracy as an element of murder and the incorporation of the elements listed in the conspiracy-to-commit-murder finding instruction had the effect, for purposes of this case, of making every element of the conspiracy charged in count two of the indictment an element of the murder charged in count one of the indictment. Consequently, appellant argues, under the test stated in Blockburger v. United States, 284 U.S. 299, 304 (1932), the charged murder offense and the lesser-included charged conspiracy offense are not distinct offenses for double jeopardy purposes. Accordingly, appellant's argument continues, the imposition of consecutive sentences for those two crimes constitutes multiple punishments for the same offense, in violation of her right to be free from double jeopardy under the United States and Virginia Constitutions. Thus, she concludes, the trial court erred in failing to set aside the jury's conspiracy verdict and dismiss the conspiracy charge. We disagree.

As relevant here, the Double Jeopardy Clause of the Fifth Amendment to the United States Constitution "guarantees protection . . . against multiple punishments for the same offense." Coleman v. Commonwealth, 261 Va. 196, 199, 539 S.E.2d 732, 733 (2001) (citing Illinois v. Vitale, 447 U.S. 410, 415 (1980)). "Virginia's constitutional guarantee against double jeopardy affords a defendant the same guarantees as the federal Double Jeopardy Clause."

- 27 -

Stephens v. Commonwealth, 263 Va. 58, 62, 557 S.E.2d 227, 230 (2002). Thus, subjecting a defendant to cumulative punishments for the "same offense" violates both state and federal constitutional protections against double jeopardy. Cf. Hudgins v. Commonwealth, 43 Va. App. 219, 241, 597 S.E.2d 221, 232 (2004) (en banc) (holding that the defendant's prosecution for larceny of the victim's bicycle from his person following his acquittal for robbery of the same bicycle from the same victim violated Virginia and federal constitutional prohibitions against double jeopardy).

In a single-trial setting, the double jeopardy doctrine does not bar the imposition of consecutive sentences for two crimes arising out of the same criminal act "unless . . . the two punishments are . . . for the same crime or one punishment is for a crime which is a lesser[-]included offense of the other." Coleman, 261 Va. at 200, 539 S.E.2d at 734; see also Brown v. Ohio, 432 U.S. 161, 168 (1977) (holding that "the greater offense is . . . by definition the 'same' for purposes of double jeopardy as any lesser offense included in it"). The test to be applied to determine whether the consecutive sentences are for the same or a lesser-included offense is "'whether each [charged offense] *requires* proof of a fact which the other does not.'" Coleman, 261 Va. at 200, 539 S.E.2d at 734 (emphasis added) (alteration in original) (quoting Blockburger, 284 U.S. at 304); see Brown, 432 U.S. at 166 ("The established test for determining whether two offenses are sufficiently distinguishable to permit the imposition of cumulative punishment was stated in Blockburger . . . ."); cf. Taylor v. Commonwealth, 11 Va. App. 649, 652-53, 400 S.E.2d 794, 795-96 (1991) (holding that the determination whether a crime is a necessarily included lesser offense of another crime "is made by examining the elements of the crimes that must be proved in order to sustain a conviction"). "'This test emphasizes the elements of the two crimes. "If each requires proof of a fact that the other does not, the Blockburger test is satisfied . . . .""'" Harrison v. Commonwealth, 220 Va. 188, 193, 257

S.E.2d 777, 780 (1979) (quoting Brown, 432 U.S. at 166 (quoting Iannelli v. United States, 420 U.S. 770, 785 n.17 (1975))). "[I]f not, [the crimes] are the 'same offense' and [the constitutional guarantee against] double jeopardy bars additional punishment . . . ." United States v. Dixon, 509 U.S. 688, 696 (1993). "In applying the Blockburger test, we look at the offenses charged in the abstract, without referring to the particular facts of the case under review." Coleman, 261 Va. at 200, 539 S.E.2d at 734.

Hence, we must determine whether the offenses of murder and conspiracy for which appellant was charged in this case each requires proof of a fact that the other does not. For purposes of this analysis, we will assume, without deciding, that the finding instruction for first-degree murder given in this case constitutes the law of the case and, thus, sets forth the elements of the charged offense of murder, as appellant claims. Looking at the legal elements of the charged offenses without regard to the facts of the case, it is clear that the charged offense of first-degree murder requires proof of a fact that the charged offense of conspiracy to commit murder does not. The murder offense requires proof that the victim was killed. See Ramsey v. Commonwealth, 2 Va. App. 265, 271-72, 343 S.E.2d 465, 470 (1986) ("In order to find a person guilty as an accessory . . . to a felony, the Commonwealth must prove the commission of the felony."). The conspiracy offense does not. See id. at 272, 343 S.E.2d at 470 ("Proof of the commission of a felony is not a necessary element of the crime of conspiracy to commit a felony . . . ."). The crucial question remains, however, whether the charged offense of conspiracy to commit murder requires proof of a fact that the charged offense of first-degree murder does not.

As previously noted, appellant maintains that the effective incorporation of the charged conspiracy-to-commit-murder offense into the finding instruction for murder renders the charged conspiracy a lesser-included offense of the charged murder. Thus, appellant concludes, the two crimes are the "same offense" for double jeopardy purposes.

In making this argument, however, appellant focuses solely on the fact that the finding instruction for murder permits the jury to find appellant guilty of first-degree murder if the Commonwealth proves appellant "conspired with . . . Hulbert in the commission of the killing." In doing so, appellant ignores the other language in the same prong of the finding instruction, which plainly indicates that proof by the Commonwealth of a conspiracy between appellant and Hulbert to commit murder is but one of two alternative means of establishing appellant's guilt with respect to the charged murder. Indeed, in view of the finding instruction's provision that the Commonwealth must prove that appellant either "acted as an accessory before the fact *or* conspired with . . . Hulbert in the commission of the killing" (emphasis added), it is clear that proof of the referenced conspiracy is not the sole basis upon which appellant's liability as an accomplice in the murder could rest. Proof that appellant participated in the murder as an accessory before the fact would also suffice to establish appellant's guilt. Hence, we cannot say, viewing the applicable legal elements of murder in the abstract, that proof of the referenced conspiracy is "required" in this context to prove the charged murder. See Coleman, 261 Va. at 200, 539 S.E.2d at 734 (holding that, in the context of a Blockburger double jeopardy analysis, "proof of the specific intent to kill" is not "required" in a malicious wounding case because Code § 18.2-51—which requires proof that the accused had "the intent to maim, disfigure, disable, or kill"—uses the disjunctive "or" in its description of the required intent for that offense); cf. Taylor, 11 Va. App. at 653, 400 S.E.2d at 796 ("Even if one offense is committed in [some] cases of the commission of another offense, it is not a necessarily included lesser offense of the other one."). Thus, although incorporated into the finding instruction for murder, the charged offense of conspiracy to commit murder is not an element that must be proven to sustain the murder conviction.

It follows, therefore, that the charged conspiracy offense requires proof of a fact the charged murder offense does not. "[C]onspiracy to commit murder requires proof of an agreement." Stevens v. Commonwealth, 14 Va. App. 238, 242, 415 S.E.2d 881, 884 (1992). Conversely, to be convicted as an accessory before the fact, one must "incite[], advise[], or abet[] others in the commission of the crime" without being "present at the commission of the offense." Tolley v. Commonwealth, 216 Va. 341, 348, 218 S.E.2d 550, 555 (1975). Plainly, it is possible to incite, advise, or abet in the commission of a crime without at the same time having agreed to commit such crime. As the United States Supreme Court has stated, "[a]iding, abetting, and counseling are not terms which presuppose the existence of an agreement. Those terms have a broader application, making the defendant a principal when he consciously shares in a criminal act, regardless of the existence of a conspiracy." Pereira, 347 U.S. at 11. Thus, murder, even when committed as an accessory before the fact, does not require proof of an agreement. See also Ramsey, 2 Va. App. at 272, 343 S.E.2d at 470 (holding that "proof of an 'agreement' to commit a felony is not a necessary element in a conviction for the commission of the felony").

Because the charged murder and conspiracy offenses each require proof of a fact that the other does not, the Blockburger test is satisfied. Consequently, the charged offenses do not constitute the "same offense" for purposes of double jeopardy, and the imposition of consecutive sentences for appellant's convictions of those offenses does not violate the constitutional guarantee against double jeopardy.

## V. WHARTON'S RULE

Appellant also contends that Wharton's Rule operates to bar her conviction and punishment under Code § 18.2-22 for conspiracy to commit murder. Thus, she concludes, the trial court erred in denying her motion to have the conspiracy conviction set aside and the charge dismissed. We disagree.

Wharton's Rule is a judicially created "doctrine of criminal law enunciating an exception to the general principle that a conspiracy and the substantive offense that is its immediate end are discrete crimes for which separate sanctions may be imposed." Iannelli, 420 U.S. at 771. See generally Boyd, 236 Va. at 351, 374 S.E.2d at 303 (articulating the current law in Virginia that convictions may be had in a single trial for "both the completed substantive offense and the underlying conspiracy"). Under the rule, "[w]hen to the idea of an offense plurality of agents is logically necessary, conspiracy [to commit that offense] . . . cannot be maintained." Stewart v. Commonwealth, 225 Va. 473, 478, 303 S.E.2d 877, 879 (1983) (holding that Wharton's Rule applies to the crime of pandering) (quoting 2 F. Wharton, Criminal Law § 1604, at 1862 (12th ed. 1932)). In other words, Wharton's Rule precludes conviction for both the substantive offense and the conspiracy to commit that offense when the substantive offense "is of such a nature as to *necessarily require* the participation of two persons for its commission."[9] Iannelli, 420 U.S. at 774 n.5 (emphasis added) (quoting 1 R. Anderson, Wharton's Criminal Law and Procedure § 89, at 191 (1957)); see also Gebardi v. United States, 287 U.S. 112, 122 (1932) (holding, with respect to the application of Wharton's Rule, that, "where it is impossible under any circumstances to commit the substantive offense without cooperative action, the preliminary agreement between the same parties to commit the offense is not an indictable conspiracy"). Thus, "[a]pplication of the rule is dependent upon a showing that the commission of the substantive offense[] *requires* the participation of two people; the fact that two or more people combine to commit an offense that could be committed by only one person does not invoke application of the rule." Ramsey, 2 Va. App. at 272, 343 S.E.2d at 470; see also Costello, supra,

---

[9] "In those cases," one commentator has explained, "participation by two people . . . is already indicated, so the social harm of a criminal combination has already been realized and punishment for conspiracy to do the same act would be an unfair doubling." John L. Costello, Virginia Criminal Law and Procedure § 17.3, at 224 (3d ed. 2002).

- 32 -

at 225 ("Simply put, if the substantive offense can be committed by one person acting alone, Wharton's Rule does not apply."); LaFave, supra, § 6.5(g)(4), at 610 ("The rule does not apply when the offense could be committed by one of the conspirators alone, nor even when cooperation was a practical but not logical necessity." (footnote omitted)).

It is clear that conspiracy to commit murder and the substantive offense of murder are discrete crimes to which Wharton's Rule does not ordinarily apply to bar the imposition of cumulative sentences. Unlike the crime of pandering and the "classic Wharton's Rule offenses—crimes such as adultery, incest, bigamy, dueling"—which, by their nature, necessarily require the participation of two persons for their commission, murder obviously can be committed by one person acting alone. Stewart, 225 Va. at 478, 303 S.E.2d at 879. Thus, "separate sanctions may be imposed" at a single trial for both murder and conspiracy to commit murder. Iannelli, 420 U.S. at 771; see Ramsey, 2 Va. App. at 272, 343 S.E.2d at 470 (holding that, under Wharton's Rule, the defendant's convictions of forgery and uttering as a principal in the second degree did not preclude her conviction of conspiracy to commit uttering); Boyd, 236 Va. at 351, 374 S.E.2d at 303 (permitting the "conviction of both the completed substantive offense and the underlying conspiracy" if the convictions occur at the same trial).

Appellant asserts, however, that Wharton's Rule precludes her conviction for conspiracy to commit murder because her murder conviction was based solely on her participation in the commission of the murder as an accessory before the fact or co-conspirator. By definition, she argues, a crime the conviction of which is based solely on a theory of accomplice liability necessarily requires the participation of at least two persons for its commission. Thus, she argues, she may not properly be convicted and punished for both the charged murder and the charged conspiracy to commit murder.

Although seemingly meritorious at first blush, appellant's argument ultimately fails for two fundamental reasons. First, appellant's reliance on the fact that she was convicted of murder under a theory of accomplice liability is misplaced in this context. As we implicitly held in Ramsey, in determining whether Wharton's Rule applies to a substantive offense the conviction of which is based on accomplice liability, the focus must be on the underlying criminal act of the particular substantive offense rather than on the accomplice aspect of the offense. 2 Va. App. at 272, 343 S.E.2d at 470. The accompliceship itself is not the completed criminal act upon which the conviction is based but simply the means by which criminal responsibility for the completed criminal act is incurred under Code § 18.2-18. See Snyder v. Commonwealth, 202 Va. 1009, 1017, 121 S.E.2d 452, 458 (1961) (holding that "before the accessory to a crime can be convicted as such, it must be shown that the crime has been committed by the principal"). Thus, the accomplice aspect of the substantive crime reflects the accused's participation in the crime and serves as the basis of the accused's criminal liability for that crime but does not constitute the substantive crime itself. Here, the substantive offense is murder, a crime which, as noted, can logically be committed by one person.

Second, Wharton's Rule "has continued vitality only as a judicial presumption, to be applied in the absence of legislative intent to the contrary." Iannelli, 420 U.S. at 782. As alluded to earlier, our Supreme Court held in Boyd, in 1988, that the legislature did not intend, in enacting Code § 18.2-23.1, to "prohibit . . . conviction of both the completed substantive offense and the underlying conspiracy, provided the convictions occurred, as here, in a single trial." 236 Va. at 351, 374 S.E.2d at 303. Thus, upon completion of the substantive crime, the crime's actual perpetrator may be convicted and punished at the same trial for both the substantive crime and the underlying conspiracy. Additionally, Code § 18.2-18 provides that "every principal in the second degree and every accessory before the fact may be indicted, tried, convicted and

- 34 -

punished in all respects as if a principal in the first degree." The statute's purpose is to ensure that any person who participates as an accomplice in a substantive crime is equally accountable and subject to the same punishment as the actual perpetrator of the crime. See Charlton v. Commonwealth, 32 Va. App. 47, 52, 526 S.E.2d 289, 292 (2000) (holding that Code § 18.2-18 "direct[s] that an accessory before the fact is accountable in all respects as the principal who carries out the intended crime, as well as any of its natural, probable, and incidental crimes"). It is clear, therefore, from the legislature's silent approval of the Supreme Court's decision in Boyd over the years and its enactment of Code § 18.2-18 that the legislature intends that an accomplice's participation in the completed substantive crime and the underlying conspiracy be treated—like the principal in the first degree's participation in those crimes—as discrete offenses for which separate convictions and punishments may be imposed in a single-trial setting. Indeed, to provide that a principal in the first degree may be separately punished for the underlying conspiracy but an accomplice to the crime may not would be to disallow the imposition of the same punishment on accomplices and principals in the first degree and would be contrary to Code § 18.2-18's mandate that such defendants may be punished equally. Hence, application of Wharton's Rule in this instance, as appellant urges, would be in direct contravention of "legislative intent to the contrary." Iannelli, 420 U.S. at 782.

Consequently, we hold that Wharton's Rule does not apply here to relieve appellant of the imposition of punishment for her conviction of the charged offense of conspiracy to commit murder.

## VI. EVIDENCE REGARDING HULBERT'S MENTAL STATE

Appellant contends the trial court erred in excluding Dr. Deem's potentially exculpatory testimony at trial regarding Hulbert's mental state at the time of the offense and in quashing portions of her subpoena *duces tecum* seeking potentially exculpatory documentation from

Dr. Deem and Loudoun County Mental Health Center regarding Hulbert's mental state at the time of the offense. She asserts that Hulbert's mental condition at the time of the offense formed an important part of her defense because Hulbert misperceived her intentions and did not possess the mental capacity to enter into a conspiracy. Thus, appellant argues, by limiting her access to such testimonial and documentary evidence, the trial court improperly "abridged her right to call for evidence and present a defense." We disagree.

As noted above, after Hulbert was charged with the murder of appellant's father, the trial court directed that a mental evaluation be performed pursuant to Code § 19.2-169.5 by the Loudoun County Mental Health Center to determine Hulbert's sanity at the time of the offense and to assist Hulbert's counsel in preparing his criminal defense, including providing mental health treatment to Hulbert if necessary. Dr. Deem, a clinical psychologist with Loudoun County Mental Health Center, performed the ordered mental evaluation, and other personnel at Loudoun County Mental Health Center provided the ordered mental health treatment.

When appellant requested the issuance of a subpoena *duces tecum* to Dr. Deem for production of certain "documents relied upon by Loudoun County Mental Health Center in the formation of opinions or reports regarding the mental health of Kyle Hulbert," Hulbert's attorney filed a motion to quash the requested subpoena, asserting that the material was protected by the attorney-client privilege under Code § 19.2-169.5(E). The trial court granted the motion to quash with respect to Dr. Deem's notes of his interviews with third parties and the Loudoun County Mental Health Center's treatment notes, finding those documents were protected under the attorney-client privilege because "Dr. Deem was an indispensable agent of [Hulbert's] attorney."

At trial, when appellant called Dr. Deem as a witness, Hulbert's counsel objected to any testimony by Dr. Deem relating to Hulbert's mental state on the grounds of attorney-client

privilege. Appellant's counsel proffered that he would ask Dr. Deem to give an opinion as to Hulbert's mental health.[10] The trial court sustained the objection of Hulbert's counsel, and Dr. Deem did not testify.

On appeal, as below, the parties agree that the court-ordered report prepared by Dr. Deem pursuant to Code § 19.2-169.5 is protected from disclosure under the attorney-client privilege established in subsection E of the statute. They further agree that Hulbert's statements to Dr. Deem, as the agent of Hulbert's attorney, are also protected under the attorney-client privilege. They disagree, however, as to whether Dr. Deem's conclusions concerning Hulbert's mental state at the time of the offense, Dr. Deem's notes of his interviews with third parties that he conducted in the course of his evaluation of Hulbert's mental condition, and the Loudoun County Mental Health Center's treatment notes are similarly protected. The Commonwealth asserts they are so protected. Appellant claims that those conclusions and documents are not protected and that the trial court erred in denying her access to them. The dispositive question before us, then, is threefold: whether the attorney-client privilege set forth in Code § 19.2-169.5 operates to thwart appellant's access to (1) Dr. Deem's testimony regarding Hulbert's mental state, (2) Dr. Deem's notes of his interviews with third parties regarding Hulbert's mental state, and (3) the treatment notes of the Loudoun County Mental Health Center regarding Hulbert's mental state. As the resolution of these issues is interrelated and interdependent, we will address them together.

---

[10] Appellant further argues in her brief, as an aside, that the trial court's denial of her request to allow a proffer for the record of Dr. Deem's specific answers to her questions constitutes an independent ground for reversal. Because this issue was not presented in a "Question Presented" for which an appeal was granted, we do not address it here. See Parker v. Commonwealth, 42 Va. App. 358, 373, 592 S.E.2d 358, 366 (2004) (recognizing that we will only consider "those arguments presented in the petition for appeal and granted by this Court").

"The admissibility of evidence is within the broad discretion of the trial court, and a ruling will not be disturbed on appeal in the absence of an abuse of discretion." James v. Commonwealth, 18 Va. App. 746, 753, 446 S.E.2d 900, 904 (1994). Furthermore, we review a trial court's decision regarding a motion to quash the issuance of a subpoena *duces tecum* "under an abuse of discretion standard." America Online, Inc. v. Anonymous Publicly Traded Co., 261 Va. 350, 359, 542 S.E.2d 377, 382 (2001); see also O'Brian v. Langley School, 256 Va. 547, 552, 507 S.E.2d 363, 366 (1998) (noting that, "generally, the granting or denying of discovery is a matter within the discretion of the trial court"). "By definition, when the trial court makes an error of law, an abuse of discretion occurs." Bass v. Commonwealth, 31 Va. App. 373, 382, 523 S.E.2d 534, 539 (2000).

> Under basic rules of statutory construction, we examine a statute in its entirety, rather than by isolating particular words or phrases. When the language in a statute is clear and unambiguous, we are bound by the plain meaning of that language. We must determine the General Assembly's intent from the words appearing in the statute, unless a literal construction of the statute would yield an absurd result.

Cummings v. Fulghum, 261 Va. 73, 77, 540 S.E.2d 494, 496 (2001) (citations omitted).

Code § 19.2-169.5 governs the resolution of this issue. Code § 19.2-169.5(A) requires the appointment of "one or more qualified mental health experts" to assist an indigent defendant who has shown before trial that his sanity at the time of the offense is likely to be "a significant factor in his defense." The appointed mental health experts are to evaluate the defendant's mental state at the time of the offense and, if appropriate, "assist in the development of an insanity defense." Code § 19.2-169.5(A). Additionally, pursuant to Code § 19.2-169.5(D), the mental health experts are to prepare a "full report" concerning the defendant's mental condition at the time of the offense. Code § 19.2-169.5(E) provides as follows:

> Disclosure of evaluation results. — The report described in subsection D shall be sent solely to the attorney for the defendant

and shall be deemed to be protected by the lawyer-client privilege. However, the Commonwealth shall be given the report, the results of any other evaluation of the defendant's sanity at the time of the offense, and copies of psychiatric, psychological, medical, or other records obtained during the course of any such evaluation, after the attorney for the defendant gives notice of an intent to present psychiatric or psychological evidence pursuant to § 19.2-168.

The statute clearly provides that the results of the mental health evaluation performed pursuant to the statute will not be disclosed to anyone except defense counsel until the defendant gives notice of his intent to present expert evidence at trial on the issue of his insanity at the time of the offense. In the meantime, those results are fully protected under the attorney-client privilege. Thus, absent a waiver of that privilege by the defendant, neither the Commonwealth nor any other party other than the defendant is entitled to receive the evaluation results unless and until the defendant gives notice that he will assert an insanity defense. Similarly, the statute provides that the Commonwealth is not entitled to receive the results of other evaluations of the defendant's sanity at the time of the offense and the records associated therewith until notice of the defendant's intention to present evidence of insanity has been given. It necessarily follows, therefore, as a matter of logic, that, under the statute, the Commonwealth likewise may not receive the psychiatric, psychological, medical, or other records produced by the mental health experts during the course of the evaluation and the defense-related treatment ordered under Code § 19.2-169.5(A) and the preparation of the report ordered under Code § 19.2-169.5(D) until after the defendant has given notice that he will assert an insanity defense.

To construe Code § 19.2-169.5 as meaning otherwise would improperly lead to the absurd results of (1) prohibiting the Commonwealth from receiving the records obtained during other mental health evaluations of the defendant's mental state at the time of the offense until a notice of insanity defense is filed but allowing the Commonwealth access to the underlying records produced by the mental health experts performing the ordered evaluation under Code

- 39 -

§ 19.2-169.5 before such notice is given and (2) protecting the results of the ordered evaluation from disclosure until notice is given by the defense pursuant to Code § 19.2-168 while allowing pre-notice discovery of the records upon which those results were based and from which those results could be directly or indirectly deduced.  See generally Cook v. Commonwealth, 268 Va. 111, 116, 597 S.E.2d 84, 87 (2004) (noting that "our case law uses the phrase 'absurd result' to describe situations in which the law would be internally inconsistent").  Accordingly, we hold that the psychiatric, psychological, medical, and other records produced by the mental health experts appointed under Code § 19.2-169.5 in the course of fulfilling their court-ordered responsibilities under Code 19.2-169.5 are protected under that statute from being disclosed to the Commonwealth until the defendant gives notice pursuant to Code § 19.2-168.

Our Supreme Court has described the attorney-client privilege as follows:

> Confidential communications between attorney and client made because of that relationship and concerning the subject matter of the attorney's employment "are privileged from disclosure, even for the purpose of administering justice."  The privilege attaches to communications of the client made to the attorney's agents . . . when such agent's services are indispensable to the attorney's effective representation of the client.  Nevertheless, the privilege is an exception to the general duty to disclose, is an obstacle to investigation of the truth, and should be strictly construed.

Commonwealth v. Edwards, 235 Va. 499, 508-09, 370 S.E.2d 296, 301 (1988) (citations omitted) (quoting Grant v. Harris, 116 Va. 642, 648, 82 S.E. 718, 719 (1914)).  It is clear that, in providing in Code § 19.2-169.5(D) that the evaluation results, although not communications by the client to counsel's agent, are to be protected under the attorney-client privilege, the legislature recognizes that the services of the mental health experts appointed pursuant to Code § 19.2-169.5(A) are indispensable to defense counsel's effective representation of the client.

Indeed, the absence of such protection would have a chilling effect on the information the appointed experts could obtain from the client during their evaluation and treatment in

- 40 -

preparation of the defendant's case, since a defendant would be reluctant to speak candidly to a mental health expert who could be called as an exculpatory witness in the trial of an alleged accomplice with adverse interests even though no notice of insanity defense had been given by the defendant or whose notes could be made immediately available to the Commonwealth. As our Supreme Court has observed,

> [c]ommunications between lawyer and client are privileged to the end that the client be free to make a full, complete and accurate disclosure of all facts, unencumbered by fear that such true disclosure will be used or divulged by his attorney, and without fear of disclosure *by any legal process*.

Seventh Dist. Comm. v. Gunter, 212 Va. 278, 286-87, 183 S.E.2d 713, 719 (1971) (emphasis added).

Here, Hulbert had not given any notice of his intent to assert an insanity defense when the trial court ruled on appellant's request for access to Dr. Deem's notes of his interviews with third parties regarding Hulbert's mental state and the Loudoun County Mental Health Center's treatment notes or when appellant called Dr. Deem as a witness at her trial.[11] Thus, Hulbert had not waived his statutorily provided attorney-client privilege protecting the results of his mental health evaluation under Code § 19.2-169.5. Consequently, under Code § 19.2-169.5(E), those results were not to be made available to anyone other than Hulbert's counsel and the Commonwealth was not entitled to receive the records produced by Dr. Deem and the Loudoun County Mental Health Center during the course of their court-ordered evaluation and treatment of Hulbert's mental condition under Code § 19.2-169.5.

As noted, when Dr. Deem was called to testify, appellant's counsel specifically represented that he would ask Dr. Deem to give his opinion regarding Hulbert's mental state at

---

[11] Hulbert had not yet been tried. Indeed, the Commonwealth reports on appeal that Hulbert never asserted an insanity defense but was instead convicted of murder on his plea of guilty.

the time of the offense. As that opinion would reveal the results of Hulbert's mental health evaluation performed by Dr. Deem pursuant to Code § 19.2-169.5, the trial court properly excluded Dr. Deem's testimony. Likewise, the trial court properly denied appellant's access to Dr. Deem's notes of his interviews with third parties regarding Hulbert's mental state and the Loudoun County Mental Health Center's treatment notes because the Commonwealth would have had access to those documents if they were released to appellant. See Rule 3A:12(b) ("Any subpoenaed writings and objects, regardless by whom requested, shall be available for examination and review by all parties and counsel.").

Accordingly, we hold that, contrary to appellant's claim, the trial court did not abuse its discretion in denying appellant access to Dr. Deem's testimony and notes and the Loudoun County Mental Health Center's notes.

## VII. CONCLUSION

For these reasons, we affirm the judgment of the trial court and appellant's convictions.

Affirmed.