# Richmond

## DIANE LOUISE STEWART

### V.

## COMMONWEALTH OF VIRGINIA

June 17, 1983.

Record No. 820550.

Present: Carrico, C.J., Cochran, Poff, Compton, Stephenson, and Thomas, JJ., and Harrison, Retired Justice.

*Susan L. Korfanty* for appellant.
*Pamela A. Sargent, Assistant Attorney General (Gerald L. Baliles, Attorney General*, on brief), for appellant.

COCHRAN, J., delivered the opinion of the Court.

In a jury trial, Diane Louise Stewart was found guilty of conspiracy to pander in violation of Code § 18.2-356.[1] Her punishment was fixed at confinement in jail for 12 months and payment of a fine in the amount of $1,000. The trial court entered judgment on the verdict.

In her sole assignment of error, Stewart alleges that the charge against her was not proved and that the trial court erred in denying her motion to set aside the verdict. She first contends that

---

[1] § 18.2-356. **Receiving money for procuring person.** — Any person who shall receive any money or other valuable thing for or on account of procuring for or placing in a house of prostitution or elsewhere any person for the purpose of causing such person to engage in unlawful sexual intercourse or any act in violation of § 18.2-361 shall be guilty of a Class 4 felony.

there was a fatal variance between the offense charged in the indictment, as amplified by a bill of particulars, and the evidence presented at trial. She further argues that the evidence failed to prove the offense as charged.

The indictment charged that between specified dates "in the County of Arlington," Stewart "did conspire, confederate, or combine with another to commit a felony in this state, to-wit: . . . [pandering.]" In response to Stewart's motion the Commonwealth filed a bill of particulars stating as follows:

1. At various times, the defendant conspired with Barbara Doherty and Jennifer Moropolous [sic].

2. The conspiracy occurred at Stouffer's Hotel in Arlington and at locations unknown to the Commonwealth.

The Commonwealth presented evidence that about the first of December, 1980, Barbara Doherty sold to Stewart three escort services that were actually prostitution businesses, with office and telephones located in Washington, D. C. The names of the services were continued, the same office and telephone numbers were used, and many of the prostitutes who had worked for Doherty became employees of Stewart. Requests for services were received by telephone at the office by Stewart or her bookkeeper, who then by telephone dispatched prostitutes to meet the prospective customers at designated locations. The charge for services was $100 per hour; each prostitute retained $60 and paid Stewart $40. Doherty discussed with Stewart the advisability of qualifying the prostitutes as tour guides to enable them to move more freely through hotels. The outcall services were provided not only in Washington but also in Maryland and Virginia; payment to Stewart of her share of the proceeds derived from the services was made at the office.

Jennifer Moropolus, who had worked as a prostitute for Doherty before the escort services were sold to Stewart, testified as a witness for the Commonwealth. She said she was employed by Stewart for the purpose of prostitution for approximately two months after Stewart bought the businesses. During the third week in December of 1980, she attended an instructional meeting Stewart conducted at Stouffer's Hotel in Arlington County. Eighteen or twenty girls were present, most of whom had previously worked for Doherty. Stewart instructed them always to check a

customer's identification, and to look for such things as luggage and an airline ticket to make sure that he was not a policeman. Although prostitution was not mentioned, that was understood to be the nature of the business under discussion.

On January 22, 1981, Moropolus received a call from the office to go to the Marriott Hotel in Arlington. She was unwilling to respond to the call until Stewart threatened to tell her parents she was a prostitute if she refused to keep the appointment. She then went to the specified hotel room but failed to follow the safety procedures outlined by Stewart. She accepted the payment of $100, undressed, and was arrested by the occupant, a detective, and charged with prostitution. About a week later, Stewart held a meeting with her girls at a Washington hotel and Moropolus told how she had been arrested because she failed to follow the pre-scribed identification procedures. According to the witness, Stewart informed the group that she was going to write a procedural manual that would be "like a front" to keep the girls "out of trouble." Moropolus said that, to help pay her lawyer's fee, she typed some of the rough copy for the booklet.

In her motion to set aside the verdict, Stewart for the first time raised the question of variance between the allegation and proof as to the location for the intended receipt of money. The Commonwealth argues that no objection on this basis was made during trial and therefore the issue was not preserved for appeal.

■ Stewart cites objections made at various stages during trial. She correctly observes that her counsel objected to Doherty's testimony concerning the sale to Stewart on the ground that the bill of particulars limited the conspiracy to Stouffer's Hotel in Arlington.[2]

The focus of this objection and the others relied upon by Stewart, as raising during trial the issue she later argued in her motion to set aside the verdict, was on the place where the conspiracy occurred, not the place where the money from prostitution was to be received by her. Stewart did not object with specificity at trial to the variance subsequently alleged and we will not now notice the objection. Rule 5:21. *See McKinley* v. *Commonwealth*, 217 Va. 1, 225 S.E.2d 352 (1976).

---

[2] The trial court overruled the objection on the ground that evidence of collateral events was admissible.

Stewart further argues that the evidence was insufficient to support her conviction. The trial court, without objection, instructed the jurors that to convict Stewart they must find beyond a reasonable doubt that she "entered into an agreement with Barbara Doherty and/or Jennifer Moropolous [sic] at Stouffer's Hotel in Arlington" to commit the felony of pandering, and that Stewart and at least one other party to the agreement intended to commit the pandering either in or out of Virginia. Stewart contends, however, that the Commonwealth did not establish a conspiracy at Stouffer's Hotel because the only co-conspirator named in the bill of particulars shown to be present was Moropolus, a prostitute. She claims, under Wharton's Rule, that her conviction for conspiracy to pander may not be based solely upon proof of her collusion with a prostitute.

Professor Francis Wharton, in nineteenth century editions of his treatise on criminal law, reported various cases involving the application of a principle of criminal law which today is known by his name. *See, e.g.,* 3 F. Wharton, Criminal Law § 2321, at 78 (6th ed. 1868). For a summary of the history of Wharton's Rule, see *Iannelli* v. *United States,* 420 U.S. 770, 779-82 (1975). The doctrine has been stated as follows:

> When to the idea of an offense plurality of agents is logically necessary, conspiracy, which assumes the voluntary accession of a person to a crime of such a character that it is aggravated by a plurality of agents, cannot be maintained.

2 F. Wharton, Criminal Law § 1604, at 1862 (12th ed. 1932). The reason for the rule rests on the nature of the crime of conspiracy, which attempts to punish combination in crime which generates criminal activity " 'not confined to the substantive offense which is the immediate aim of the enterprise.' " *Iannelli, supra,* 420 U.S. at 778, quoting *Callanan* v. *United States,* 364 U.S. 587, 594 (1961). The classic Wharton's Rule offenses — crimes such as adultery, incest, bigamy, duelling — "are characterized by the general congruence of the agreement and the completed substantive offense" and, therefore, indictment for conspiracy to commit such crimes is deemed to be unsound. *Iannelli, supra,* 420 U.S. at 782. A recent edition of Professor Wharton's text states, as an example of the Rule's application, that there can be

no conspiracy between a prostitute and a panderer. 4 Wharton's Criminal Law § 731, at 545 (C. Torcia 14th ed. 1981).

■ The Commonwealth asserts that *Iannelli* has in effect repudiated Wharton's Rule. We do not agree. *Iannelli* merely analyzed the Rule and held that "absent legislative intent to the contrary, the Rule supports a presumption that . . . [conspiracy and the substantive offense] merge when the substantive offense is proved." 420 U.S. at 785-86. The Court held that the legislative intent was not to merge conspiracy to violate the anti-gambling provisions of the Organized Crime Control Act of 1970 with the substantive offense of illegal gambling. Therefore, the defendants could be convicted of conspiracy to violate the statute and the substantive offense of violating it.

■ According to the Commonwealth, the legislative intent to retain conspiracy as a separate offense in this context may be found in the fact that the General Assembly has enacted a comprehensive series of statutes designed to deal with prostitution and has made both pandering and prostitution illegal. The numerous statutes, Code §§ 18.2-347 to -349 and §§ 18.2-355 to -358, punishing various types of prostitution-related conduct generally involving more than one person, could also reasonably be understood to indicate, however, at least in cases not involving third parties, an intention to address this type of criminal activity fully under those statutes rather than through a charge under § 18.2-22 for conspiracy to violate § 18.2-356. We do not perceive in this case the "clear and unmistakable legislative judgment" against merger manifested in *Iannelli*, 420 U.S. at 791. Unless the present case falls within some exception, Wharton's Rule appears to be applicable.

■ Under the "third-party exception" to the Rule a conspiracy charge may be brought where the agreement which is the basis for the conspiracy involved more participants than were necessary for the commission of the substantive offense. *See, e.g., United States v. Benter*, 457 F.2d 1174 (2d Cir. 1972) (conspiracy to commit bribery conviction upheld where additional party was involved), *cert. denied*, 409 U.S. 842 (1972); *People v. Incerto*, 180 Col. 366, 505 P.2d 1309 (1973) (*en banc*); *State v. Wells*, 249 S.C. 249, 153 S.E.2d 904 (1967) (conspiracy to perform illegal abortion may be charged where nurses actively participated in the conspiracy). The rationale supporting this exception is that the addition of a third party enhances the dangers presented by the crime

and thus invokes the policy concerns addressed by the law of conspiracy.

The Commonwealth says the evidence showed a conspiracy which involved not just Moropolus but also Doherty. But evidence of Doherty's involvement, which might have made the third-party exception available, cannot be considered because the jury convicted Stewart under the court's instruction which required proof of a conspiracy at Stouffer's Hotel. There was no evidence placing any of Doherty's activity at Stouffer's Hotel.[3] The Commonwealth stated in oral argument that there was evidence of conspiracy in Washington when Doherty discussed with Stewart the plan for use of "tour guides" to make the business more profitable, and Moropolus assisted in the preparation of new guidelines. The Commonwealth, however, relied upon the meeting at Stouffer's to establish the conspiracy, and the court's instruction was based upon this theory.

We agree with Stewart that by itself the evidence of Stewart's collusion with Moropolus will not support her conspiracy conviction. The conspiracy alleged between them involved the same persons who would have been involved in the cooperative conduct which would support a violation of § 18.2-356 or § 18.2-357. We believe that the conduct punished under § 18.2-356 and § 18.2-357 and the conduct sought to be reached by a conspiracy charge under those sections is sufficiently congruent to require the application of Wharton's Rule, at least where only the potential panderer and the potential prostitute are parties to the agreement alleged.

Stewart further contends that under Virginia law a prostitute cannot be convicted of pandering and therefore, under *Gebardi v. United States*, 287 U.S. 112 (1932), the Commonwealth's case fails because there was no evidence of an agreement by Stewart at Stouffer's Hotel with a person capable of conspiring to violate § 18.2-356.

---

[3] The indictment charged the conspiracy occurred in Virginia. The bill of particulars alleged a conspiracy with Doherty and Moropolus which "occurred at Stouffer's Hotel in Arlington and at locations unknown to the Commonwealth." During trial, however, the Commonwealth's Attorney agreed with the trial judge that what he was "basically alleging is that the conspiracy was between Moropolus and the defendant." Moreover, the Commonwealth's Attorney made no objection to the jury instruction limiting the conspiracy to Stouffer's Hotel.

*Gebardi* required the Supreme Court to decide whether a woman's mere concurrence in her transportation by a man for unlawful sexual purposes could support the conspiracy convictions of the woman and the man, who was the only other party to the alleged agreement. The Court examined the substantive offense (unlawful transportation across state lines in violation of the Mann Act) and decided that a woman who only acquiesced in her unlawful transportation could not be convicted under the statute. The Court further reasoned that the woman could not conspire to commit an offense which she herself could not commit. The Court then addressed the sufficiency of the evidence to support the conspiracy convictions.

> On the evidence before us the woman petitioner has not violated the Mann Act and, we hold, is not guilty of a conspiracy to do so. As there is no proof that the man conspired with anyone else to bring about the transportation, the convictions of both petitioners [the man and the woman] must be [r]eversed.

287 U.S. at 123.

We concur in the holding in *Gebardi* and believe it is applicable, by analogy, to this case. In *Edwards* v. *Commonwealth*, 218 Va. 994, 1002, 243 S.E.2d 834, 839 (1978), in discussing § 18.2-356 and § 18.2-357, we said "[i]t is not the prostitute that these statutes seek to reach but the one who profits from an act of prostitution by another." Furthermore, in *Clinton* v. *Commonwealth*, 204 Va. 275, 283, 130 S.E.2d 437, 443 (1963), *rev'd on other grounds*, 377 U.S. 158 (1964), we recognized that a prostitute could not be indicted, under what is now § 18.2-357, for receiving money from her own earnings as a prostitute.

In *Edwards*, we observed that § 18.2-356 and § 18.2-357 seek to punish essentially the same conduct. Therefore, we believe the statement in *Clinton* to be equally applicable to § 18.2-356. Thus, a prostitute cannot be convicted in Virginia of receiving funds for the purpose of procuring her own unlawful sexual conduct.[4] It follows, we believe, in accordance with the *Gebardi* decision, that Moropolus cannot be convicted of conspiring to violate § 18.2-356

---

[4] There is no evidence that Moropolus conspired to receive money for the procuring of prostitutes other than herself.

and further that her collusion with Stewart cannot, by itself, support Stewart's conspiracy conviction.

Thus, under both Wharton's Rule and principles applied in *Gebardi*, we hold that the evidence was insufficient to establish Stewart's guilt of conspiracy to violate Code § 18.2-356 and her conviction must be reversed.

*Reversed and final judgment.*