COURT OF APPEALS OF VIRGINIA


Present:  Chief Judge Fitzpatrick, Judge Annunziata and
          Senior Judge Overton
Argued at Norfolk, Virginia


ROBERT WAYNE DEHAVEN
                                    MEMORANDUM OPINION[*] BY
v.    Record No. 1886-01-1          JUDGE NELSON T. OVERTON
                                         JULY 23, 2002
COMMONWEALTH OF VIRGINIA


            FROM THE CIRCUIT COURT OF THE CITY OF NORFOLK
                   John C. Morrison, Jr., Judge

           Joseph A. Pennington (Joseph A. Pennington &
           Associates, P.C., on brief), for appellant.

           Jennifer R. Franklin, Assistant Attorney
           General (Jerry W. Kilgore, Attorney General,
           on brief), for appellee.

     Robert Wayne Dehaven, appellant, was convicted of conspiring

to receive stolen goods.  He appeals and contends the evidence was

insufficient to support his conviction, alleging specifically that

(I) there was no evidence that he entered an agreement to perform

an unlawful act and (II) the only evidence of wrongful conduct

involved a two-party transaction which is not a sufficient

predicate for a conspiracy conviction.  For the following reasons,

we affirm appellant's conviction.

_____

        * Pursuant to Code § 17.1-413, this opinion is not
designated for publication.

                                   Facts

     "On appeal, 'we review the evidence in the light most

favorable to the Commonwealth, granting to it all reasonable

inferences fairly deducible therefrom.'"  Archer v.

Commonwealth, 26 Va. App. 1, 11, 492 S.E.2d 826, 831 (1997)

(citation omitted).  "The credibility of the witnesses and the

weight accorded the evidence are matters solely for the fact

finder who has the opportunity to see and hear that evidence as

it is presented."  Sandoval v. Commonwealth, 20 Va. App. 133,

138, 455 S.E.2d 730, 732 (1995).

     So viewed, the evidence proved that Chrystine Kelley stole

goods, such as medicine, DVDs, tools, clothes and Disney movies,

to support her heroin addiction.  Kelley was a "booster," who is

someone who steals merchandise and "fences" the goods.  From

1993 until February 10, 2000, Kelley sold these stolen goods to

appellant at a pawnshop, a flea market, in parking lots, or on

side streets.  From January 1, 1998 until August 8, 2000, the

time period in question, Kelley had approximately 100

transactions with appellant.  The goods she sold appellant at

any one transaction had a retail value of between $2,000 and

$10,000.  She would carry the goods, always in their original

wrappers, in grocery bags to where she met appellant.  Depending

on how much merchandise she was selling appellant in the

transaction, she would either dump it out, count it, and

                                   -

appellant would pay her for it, or she would deliver the goods to appellant with an amount already tallied, appellant would pay her that amount, and "get back to her" if something was not right. Appellant was only one of three "fences" to whom Kelley sold the stolen goods. Kelley "boosted" the goods immediately after stealing them, within an hour if she could "get in touch with the fence."

Appellant would request certain items from Kelley, such as DVDs, specific size bottles of medicine, or computer software, and suggested to Kelley the stores from which to steal the specific goods he wanted. When Kelley was in withdrawal and "too sick to steal," she would borrow money from appellant for a "fix."

Kelley knew of six or seven other people who "boosted" for appellant, including Eddie Brown. Brown, also a heroin addict, met appellant in November 1999. A friend of Brown's told him that appellant "buys medicine." Brown stole medicine from K-Mart and sold it, in its original packaging, to appellant the same day. Brown also sold appellant DVDs, Nintendo cartridges, hair clippers, and "just about anything." If Brown sold to appellant early in the day, appellant encouraged Brown to "go out and get some more." Brown stole merchandise and sold it to appellant in order to support his heroin addiction.

Thereafter, Brown worked with the police as a confidential informant. Brown introduced appellant to Officer W.L. Brabson, who was working as an undercover officer. Brabson sold appellant a bag containing DVDs. Brown told appellant that Lawrence Hill, another officer working on the case, was "the person to see if he needed more DVD movies." Two weeks later, Brabson called appellant's cell phone and arranged to meet and sell appellant more DVDs. When they met thirty-five minutes later in the Big Top lot, appellant drove up and told Brabson to get in the vehicle "because he did not want to look suspicious." Brabson sold appellant DVDs, film, and razor blades for cash. Several months later, Brabson again called appellant's cell phone and told him he had more DVDs and arranged to meet him at a 7-Eleven parking lot. When appellant drove up, Brabson handed him the bag of DVDs, appellant put the bag into the backseat and paid Brabson in cash.

After buying these goods from his "boosters," appellant would sell the goods to Carl Schumacher one or more times a week. Appellant would bring the goods to Schumacher's warehouse. Schumacher sold the stolen property from his warehouse.

## Discussion

### I.

At trial, appellant argued that Wharton's Rule barred his conviction for conspiring to receive stolen goods. Appellant never argued to the trial court that the evidence was insufficient to prove he entered into an unlawful agreement. "The Court of Appeals will not consider an argument on appeal which was not presented to the trial court." Ohree v. Commonwealth, 26 Va. App. 299, 308, 494 S.E.2d 484, 488 (1998). See Rule 5A:18. Accordingly, Rule 5A:18 bars our consideration of whether the evidence was sufficient to prove appellant entered into an unlawful agreement. Moreover, the record does not reflect any reason to invoke the good cause or ends of justice exceptions to Rule 5A:18.

### II.

"Wharton's Rule" is defined as "'[w]hen to the idea of an offense plurality of agents is logically necessary, conspiracy, which assumes the voluntary accession of a person to a crime of such a character that it is aggravated by a plurality of agents, cannot be maintained.'" Stewart v. Commonwealth, 225 Va. 473, 478, 303 S.E.2d 877, 879 (1983) (quoting 2 F. Wharton, Criminal Law § 1604, at 1862 (12th ed. 1932)). "Wharton's Rule, therefore, will bar conviction for conspiracy to commit a criminal act where only those parties necessary to the

-

commission of the underlying offense are involved in the conspiracy to commit that offense." Brown v. Commonwealth, 10 Va. App. 73, 80, 390 S.E.2d 386, 389 (1990).

The evidence in this case supports more than a mere buy-sell agreement. Appellant was the "middle man" between his "boosters" and Schumacher. Appellant directed the activities of his "boosters," Kelley and Brown, by telling them what he wanted, where they could find the specific goods, and, if it was early in the day, by directing them to obtain more goods. In addition, appellant made loans to Kelley so she could get "a fix" to feel well enough to steal more goods, giving appellant a vested interest in Kelley's success. The fact finder could reasonably infer that the "boosters" sold stolen goods to appellant knowing that appellant intended to resell them and that by following appellant's directives on what to steal and where to steal the goods, the "boosters" intended to further, promote, and cooperate in appellant's plan to resell the goods. Appellant knew what his buyer wanted and, therefore, directed his "boosters" to get those particular goods. See Feigley v. Commonwealth, 16 Va. App. 717, 722-23, 432 S.E.2d 520, 524 (1993) ("A conspiracy to distribute drugs can be shown by a series of drug transactions where one person sells drugs to a buyer who, in turn, resells them to a third party."). More parties were involved in the conspiracy to receive stolen goods

-

than were necessary for the underlying offense of receiving stolen goods; therefore, Wharton's Rule does not bar appellant's conspiracy conviction.

The evidence, viewed in the light most favorable to the Commonwealth, was sufficient to support the finding that a conspiracy existed between appellant and his "boosters" to get stolen goods to resell to third parties, one of whom was Schumacher.  For these reasons, appellant's conviction is affirmed.

Affirmed.

-