PRESENT:  All the Justices

COMMONWEALTH OF VIRGINIA

v.  Record No. 210027

REBECCA JONES RICHARD

OPINION BY
JUSTICE S. BERNARD GOODWYN
December 29, 2021

FROM THE COURT OF APPEALS OF VIRGINIA

In this appeal, regarding Rebecca Jones Richard's conviction for conspiracy to distribute

a controlled substance, we consider whether the Court of Appeals erred in ruling that the circuit

court abused its discretion in denying two proffered jury instructions regarding the

single-buyer/seller relationship exception to conspiracy liability.

BACKGROUND

On June 14, 2018, Matthew Harris arranged via text message with Michael Wade, who

was known to Harris as "Mike from Willis," to trade three "8-balls"* of methamphetamine for

Wade's Pontiac automobile (the Pontiac).  Harris and Wade agreed to meet at a Dollar General

store in Check, Virginia, to make the trade.  In fact, however, there was no Pontiac to be had;

Wade was an undercover investigator from the Floyd County Sheriff's Office planning to

execute a sting operation.

On June 15, 2018, Harris contacted Rebecca Jones Richard to purchase

methamphetamine from her.  Harris showed Richard the text messages with Wade and she saw

that Wade wanted drugs in exchange for the Pontiac.  Richard told Harris that she did not have

any drugs for him to purchase because the police had recently raided her home, seized all her

---

* As we have previously explained, three "eight-balls" amounts to "approximately ten and a half grams." *Lawlor v. Davis*, 288 Va. 223, 231 (2014).

drugs, and were watching her residence. However, Richard did not have a car and wanted to acquire one "to leave and start a new life."

Because Richard did not have any drugs but was interested in acquiring a car, Harris agreed to "front" her the methamphetamine to trade for the Pontiac. According to their agreement, Harris would provide the drugs, and Richard would reimburse Harris for the drugs with money from her social security disability checks, as well as proceeds she expected to receive from selling her personal property. Until Richard could pay off her debt, Harris would "own half the car." Richard agreed to give $250 to Harris as a payment on what she owed him. Harris and Richard agreed, however, that if Wade demanded more than the agreed-upon three 8-balls, then Richard would apply her $250 toward the purchase of the Pontiac.

As part of the agreement, Richard agreed to drive with Harris to the meeting point because Harris did not have a valid driver's license. Additionally, Richard consented to hold the drugs on her person. Richard and Harris also decided that, in case something went wrong during the deal, Richard would "drive away [with the drugs] and [come back later in the day to] pick Harris up." They also arranged to bring along their friend, Jeffrey Lee, so Lee could inspect the Pontiac during the exchange.

When Richard, Harris, and Lee arrived at the Dollar General, Wade was already waiting in an unmarked car across the street. Wade immediately recognized Harris' car, and he also identified that Harris was one of the passengers inside the car. Seeing that there were three passengers inside the car, Wade sent a text message to Harris to confirm that he properly identified Harris. Harris looked down at his phone immediately after Wade sent the text message, and a few minutes later, Wade and two other deputies arrested Richard, Harris, and Lee.

When Wade arrested Richard, Richard confessed that she had methamphetamine in her bra, which she said she had brought with her "to purchase a vehicle." Richard gave Wade a detailed account of her agreement with Harris to trade the methamphetamine for the Pontiac.

On October 2, 2018, a grand jury returned two true bills of indictment against Richard on one count of possession of a schedule II drug with intent to distribute under Code § 18.2-248(C) and one count of conspiracy to distribute a schedule I or schedule II drug under Code § 18.2-256.

On July 9, 2019, the Circuit Court of Floyd County conducted a jury trial on both charges against Richard. At trial, Wade testified about his arrangement with Harris to trade the Pontiac for drugs. Additionally, Wade testified that, when he arrested Richard, Richard told him about her agreement with Harris.

At the close of the Commonwealth's case-in-chief, Richard moved to strike the evidence on the conspiracy charge, arguing that the Commonwealth had only established "a buyer/seller transaction[, a]nd a conspiracy, of course, cannot be a single buyer/seller transaction." The circuit court denied the motion, holding:

> Ms. Richard wanted a car. Harris knew she wanted a car. Harris talked to Investigator Wade and wanted to know if he still had a car. So Richard goes with Harris and . . . she knew that he was delivering dope to buy a car. So she knew that, that's your conspiracy. She wanted a car, she knew that Harris was getting the car with the dope. As a matter of fact, she went even so far as to possess and transferred the dope herself in her bra. And the car went to her. So this isn't a single buyer, single seller. Richard knew Harris was giving dope, according to your argument, to buy the car. And at that point, that's your conspiracy.

Richard testified on her own behalf and corroborated Wade's story. At the conclusion of Richard's case-in-chief, Richard renewed her motion to strike the evidence. The circuit court denied the renewed motion to strike, stating that "[t]hey were planning a get away in case the deal went sour" and that the case presented "more than seller/buyer."

3

The jurors were instructed that in order to find Richard guilty of conspiracy, they needed to find beyond a reasonable doubt "(1) [t]hat the defendant entered into an agreement with one or more other persons; (2) [t]hat the agreement was that they were to commit distribution of a schedule II drug; and (3) [t]hat both the defendant and at least one other party . . . intended to commit distribution . . . ." They were further instructed that "[t]he existence of an agreement may be inferred from the actions or conduct of the parties."

Richard proffered two jury instructions regarding the single-buyer/seller relationship exception to conspiracy liability. One instruction stated that "[a] single buyer-seller relationship, standing alone, does not constitute a conspiracy." The other stated:

> A single buyer-seller relationship may constitute a conspiracy only if:
> (1) The seller knows the buyer's intended use; and
> (2) That by the sale, the seller, intends to further, promote and cooperate in the venture.

The circuit court denied both of these instructions tendered by the defense, stating, "I don't think the facts show that in this case, so I'm going to deny it." The jury convicted Richard of possession with intent to distribute and of conspiracy to distribute a controlled substance. The circuit court sentenced Richard to five years' imprisonment on the possession conviction and an additional five years' imprisonment on the conspiracy conviction.

Richard appealed her convictions to the Court of Appeals. The Court of Appeals granted Richard's appeal challenging the sufficiency of the evidence regarding the conspiracy to distribute a controlled substance charge and challenging the circuit court's refusal to instruct the jury regarding the single-buyer/seller relationship exception. Regarding the error assigned concerning the sufficiency of the evidence, the Court of Appeals held that the circuit court did not err in denying Richard's motion to strike because a "rational trier of fact could have found the elements of shared intent, preconcert, and connivance in a plan to distribute

4

methamphetamine, thereby concluding that Richard and Harris conspired to distribute methamphetamine in exchange for a car." *Richard v. Commonwealth*, 72 Va. App. 598, 614 (2020).

Concerning the jury instructions, the Court of Appeals held that the circuit court erred in denying the instructions. It reversed Richard's conspiracy conviction and remanded the case for a new trial, holding that the circuit court abused its discretion when it denied the proffered jury instructions. The Court of Appeals reasoned that more than a scintilla of evidence supported the proffered single-buyer/seller jury instructions because:

> [W]hether a properly instructed jury would view the facts in that light is an open question since they were not instructed that the nature of the transaction and the degree of Richard's involvement in it *might*, though not necessarily would, make a difference in her criminal liability for conspiracy.

*Id.* at 616.

The Commonwealth appeals. We granted its lone assignment of error:

> The Court of Appeals erred in ruling that the trial court abused its discretion in failing to instruct the jury on the single drug buyer/seller exception to conspiracy.

ANALYSIS

On appeal, the Commonwealth argues that the Court of Appeals erred in reversing Richard's conspiracy conviction because the facts of the case do not support the single-buyer/seller relationship jury instructions. In the Commonwealth's telling, Richard and Harris "devised an elaborate plan to exchange methamphetamine for a car." The Commonwealth contends that the evidence presented at trial, which included Richard's confession to Wade and her testimony at trial about her agreement with Harris, is undisputed and does not provide a scintilla of evidence to support the proffered jury instructions regarding there being a single buyer/seller relationship between Richard and her alleged co-conspirator, Harris.

"A trial court's decision whether to grant or refuse a proposed jury instruction is generally subject to appellate review for abuse of discretion." *Howsare v. Commonwealth*, 293 Va. 439, 443 (2017). "[J]ury instructions are proper only if supported by the evidence, and more than a scintilla of evidence is required." *Payne v. Commonwealth*, 292 Va. 855, 869 (2016) (quoting *Lawlor v. Commonwealth*, 285 Va. 187, 228 (2013)).

The Court of Appeals correctly identified Wharton's Rule as the progenitor of the single-buyer/seller relationship exception to conspiracy liability. *See Richard*, 72 Va. App. at 611 (citing *Stewart v. Commonwealth*, 225 Va. 473, 478 (1983)). Wharton's Rule states, "When to the idea of an offense plurality of agents is logically necessary, conspiracy, which assumes voluntary accession of a person to a crime of such a character that it is aggravated by a plurality of agents, cannot be maintained." *Stewart*, 225 Va. at 478 (quoting 2 F. Wharton, Crim. Law § 1604, at 1862 (12th ed. 1932)). Stated differently, Wharton's Rule applies when the conspiracy alleged involves the same persons who would have been involved in the cooperative conduct which would support a violation of the substantive crime. *See id.* at 480.

"Traditionally the law has considered conspiracy and the completed substantive offense to be separate crimes." *Iannelli v. United States*, 420 U.S. 770, 777 (1975). As stated by the Court of Appeals, "[h]owever[,] 'Wharton's Rule' recognizes an exception to the common law of conspiracy." *Richard*, 72 Va. App. at 611. "The reason for the rule rests on the nature of the crime of conspiracy, which attempts to punish combination in crime which generates criminal activity 'not confined to the substantive offense which is the immediate aim of the enterprise.'" *Stewart*, 225 Va. at 478 (quoting *Iannelli*, 420 U.S. at 778). "The classic Wharton's Rule offenses—crimes such as adultery, bigamy, duelling—'are characterized by the general congruence of the agreement and the completed substantive offense' and, therefore, indictment

6

for conspiracy to commit such crimes is deemed to be unsound." *Id.* at 479 (quoting *Iannelli*, 420 U.S. at 782).

Wharton's Rule applies where "[t]he parties to the agreement are the only persons who participate in the commission of the substantive offense, and the immediate consequences of the crime rest on the parties themselves rather than on society at large." *Iannelli*, 420 U.S. at 782. "[A]bsent legislative intent to the contrary, [Wharton's] Rule supports a presumption that . . . [conspiracy and the substantive offense] merge when the substantive offense is proved." *Stewart*, 225 Va. at 479 (quoting *Iannelli*, 420 U.S. at 785-86).

> This Court has recognized a "third-party exception" to Wharton's Rule.
>
> Under the "third-party exception" to [Wharton's] Rule a conspiracy charge may be brought where the agreement which is the basis for the conspiracy involved more participants than were necessary for the commission of the substantive offense. The rationale supporting this exception is that the addition of a third party enhances the dangers presented by the crime and thus invokes the policy concerns addressed by the law of conspiracy.

*Id.* (internal citations omitted).

When applied to a case involving the distribution of drugs, Wharton's Rule requires that when a single buyer and a single seller agree to a drug exchange, that agreement does not constitute a conspiracy, only an illegal sale of drugs. That is the single-buyer/seller relationship exception to conspiracy liability. *See, e.g., United States v. Parker*, 554 F.3d 230, 234 (2d Cir. 2009).

In this case, Richard and Harris are both on the sell-side of the illicit transaction they allegedly conspired to perpetrate. Undisputed evidence at trial confirmed their joint efforts in planning the criminal activity. Richard and Harris conspired to execute the sale of methamphetamine in exchange for the Pontiac. They agreed to drive together, escape together, and entered an elaborate financing scheme that saw Richard agreeing to put money toward the

7

purchase of the Pontiac and reimburse Harris for the drugs they were going to sell. "[P]reconcert and connivance," a criminal agreement, are the essence of a conspiracy conviction. *United States v. Peterson*, 524 F.2d 167, 174 (4th Cir. 1975). The evidence amply shows preconcert and connivance between the two purported sellers.

The Court of Appeals incorrectly stated that "[the jury was] not instructed that the nature of the transaction and the degree of Richard's involvement in it *might*, though not necessarily would, make a difference in her criminal liability for conspiracy." The question of whether the "nature" and "degree" of Richard's involvement warranted a finding that she was guilty of conspiracy went to the weight and sufficiency of the evidence that an agreement existed, and the jury was instructed on that issue by the circuit court's instructions explaining the elements of a conspiracy. *See, e.g., Reed v. Commonwealth*, 213 Va. 593, 594 (1973) ("In order to convict defendant of conspiring . . . to distribute a controlled drug, the Commonwealth had to prove beyond a reasonable doubt that an agreement existed between the two men[.]").

"[I]f two sellers cooperate to arrange a drug deal with a buyer, their agreement makes out a conspiracy even if they agree to just one sale." *United States v. Wheat*, 988 F.3d 299, 308 (6th Cir. 2021). Wharton's Rule is not applicable in cases where, like this one, no congruence exists between the conspiratorial agreement and the agreement that makes up the substantive offense. The agreement between Richard and Harris to jointly sell drugs to Wade "invokes the policy concerns addressed by the law of conspiracy." *See Stewart*, 225 Va. at 479. Wharton's Rule is inapposite in such a case.

There was not more than a scintilla of evidence to support a jury finding that the alleged conspiracy between Richard and Harris was the result of a single-buyer/seller relationship between them. Therefore, the circuit court did not abuse its discretion in denying the proffered

8

jury instructions concerning a single-buyer/seller relationship. The Court of Appeals erred in reversing Richard's conviction for conspiracy.

CONCLUSION

In sum, the circuit court did not abuse its discretion in denying Richard's proffered jury instructions regarding the single-buyer/seller relationship exception because there is not more than a scintilla of evidence to support the circuit court giving such instructions. Therefore, the Court of Appeals erred in reversing Richard's conviction for conspiracy. Accordingly, we will reverse the judgment of the Court of Appeals and reinstate Richard's conviction for conspiracy to distribute a controlled substance.

*Reversed and
final judgment.*